[No. 11511.   Department Two.—July 28, 1886.]

## JAMES BETTNER, APPELLANT, v. L. M. HOLT, RESPONDENT.

LIBEL — BREACH OF TRUST BY AGENT — FALSE PUBLICATION CHARGING IS
    LIBELOUS — OBLOQUY. — The action was brought to recover damages for
    an alleged libel.   The plaintiff, as the agent of certain residents of the
    town of Riverside, who were interested in the cultivation of fruit, had
    taken specimens of fruit grown by them for exhibition at the World's
    Fair in New Orleans.   The alleged libel consisted in the publication in a
    newspaper of an article, quoted in the opinion, in which the conduct of
    the plaintiff as such agent was severely criticised.   The complaint alleged
    that the article intended to charge, and was so understood by its readers,
    that the plaintiff, in violation of his trust, had corruptly failed to make
    a proper exhibit of fruit sent by the contributors, but had appropriated
    it himself, and entered it in his own name and for his own benefit; that
    the exhibit had not been conducted in an honorable or upright manner,
    and that he had failed to make any report of his actions as such agent,
    because the report, if given, would disclose his corrupt and dishonest
    acts.   Held, that the article was calculated to expose the plaintiff to
    obloquy, and if false, was libelous.
ID. — OBLOQUY DEFINED. — To expose a person to obloquy is to expose him
    to censure and reproach.

APPEAL from a judgment of the Superior Court of San
Bernardino County.

The facts are stated in the opinion.

*Paris & Goodcell,* for Appellant.

*Curtis & Otis,* for Respondent.

FOOTE, C.—Bettner brought an action against Holt
for a libelous and unprivileged publication.

The complaint was demurred to as not stating facts
sufficient to constitute a cause of action; the demurrer
was sustained, and the plaintiff not having filed an
amended complaint within the time allowed by the court,
judgment for costs, etc., was given in favor of the defendant, from which the plaintiff has appealed.

The pleading which was on demurrer held insufficient
is as follows:—

"The plaintiff for cause of action against the defendant alleges,—

"That the plaintiff and others, being at the time residents of Riverside and vicinity in this county, and largely interested in the raising of oranges and other fruits in that locality, sent a collection of such fruits to the World's Fair held at New Orleans in 1884–85, to be at such fair entered and exhibited for premiums; and this plaintiff and H. J. Rudisill attended such fair in charge of said fruit, as the agents and representatives of all such contributors, to see that said fruit was properly entered and exhibited at said World's Fair.

"That the plaintiff performed his duty as such agent and representative, and thereafter, on or about the —— day of April, 1885, returned to his place of residence at said Riverside.

"That thereafter, on April 25, 1885, the defendant, being at the time the editor and publisher of a weekly newspaper published at said Riverside, and called the Press and Horticulturist, published in said newspaper, in a regular issue thereof of that date, an article entitled 'Intelligent Report from New Orleans' (referring to said World's Fair), in which article the defendant used and published the following language:—

"'After a lapse of several weeks, we are enabled to publish a report from the citrus-fruit contest at New Orleans, in which Riverside and our readers generally throughout California are so universally interested. Although we had two representatives at New Orleans [meaning this plaintiff and H. J. Rudisill], and one of them [meaning this plaintiff] returned home with this information in his pocket two weeks ago, yet we had to wait till the Florida papers bring us this information, so that it could be given to our people, who furnished the fruit with which to make an exhibit,'—meaning the fruit in charge of this plaintiff and H. J. Rudisill aforesaid. Here followed in said article the report referred to.

"That in said issue of said newspaper, and side by side with said article, and commenting thereon, the defendant published another article, etc., entitled, 'A Little World's Fair History,' in which the defendant used and published the following language:—

"'Eighty of our fruit-growers contributed 164 boxes of fruit, an average of more than two boxes each, and the exhibit was sent to New Orleans, Messrs. James Bettner and H. J. Rudisill going to take charge of the same [meaning the fruit sent by this plaintiff and others in charge of this plaintiff and H. J. Rudisill, as before in this complaint alleged].

"'We have done our very best by telegraphing and making personal applications to get news for our readers, and up to the present time have got no report of what our representatives did at New Orleans, and hence have to depend entirely on Florida reports and Kimball Brothers of National City for news.

"'We find that out of eighty contributors, only thirteen had any fruit entered for premiums, and out of *thirty-two* entries, James Bettner had *eleven* entered in his·name.

"'When it came to lemons, Mr. E. W. Holmes [meaning one of said contributors who had sent fruit in charge of this plaintiff and H. J. Rudisill] picked the very best he had to send to New Orleans, and yet with what he had left he took the premium at Riverside, but his lemons were not entered at all at New Orleans. R. P. Waite and scores of others whom we might mention [meaning others of said contributors] were also left out in the cold.

"'Messrs. Kimball Brothers took an entire citrus fair to New Orleans, and were at liberty to enter any of the fruit therein contained in their own name for premiums; hence in making their selections they had an entire citrus fair to select from. In the Riverside exhibit, with few exceptions, Mr. Bettner was confined to his own exhibit of *eight* boxes from which to select fruit to make eleven entries and secure five premiums.

"'We will say in this connection that the officers of the fruit company here in Riverside tried to conduct the exhibit in an honorable, upright manner, but the management got beyond their control.    Those who shipped the fruit had a right to a report when Mr. Bettner returned, but not a word has he made public; and we don't blame him for not wanting to make one.'

"That by the use and publication of said words and language, used and published by the defendant as aforesaid, he intended to charge and assert, and to be understood as charging and asserting, and by the readers of said newspaper was in fact understood as charging and asserting, that this plaintiff, in violation of his trust as said agent and representative, had corruptly and dishonestly failed to make a proper entry or exhibit at said World's Fair of fruit sent by said contributors in his charge, but had himself appropriated fruit belonging to others of said contributors, and had entered and exhibited in his own name and for his own benefit fruit that he should have entered and exhibited in the name of and for the benefit of some other or others of said contributors; that the exhibit of fruit so sent from Riverside was not conducted in an honorable or upright manner, because of the corrupt and dishonorable action of this plaintiff as said agent and representative; and that plaintiff had refused to furnish information to said newspaper, or to make any report of his action as such agent and representative, and did not want to make such report, because such information or report, if given or made, would disclose corrupt and dishonest conduct on the part of the plaintiff such as was charged by the defendant in said articles.

"That said charge, so made and published by the defendant, and so understood and by him intended to be understood by the readers of said newspaper, was and is false, scandalous, and unprivileged, and did and does expose the plaintiff to hatred, contempt, and obloquy, by im-

puting to him dishonesty and corruption in violation of his trust as said agent and representative.

"That said articles were so published by the defendant as editorials, with the apparent and express sanction and authority of the defendant as the editor and publisher of said newspaper; and said issue of said newspaper containing said articles was by the defendant widely circulated among the people of said Riverside and vicinity, and thoughout this county and state, and elsewhere, and said articles were generally read by the subscribers of said newspaper and others, and were by them generally understood to have the sense and meaning aforesaid, and to charge the plaintiff with corrupt and dishonorable conduct, as hereinbefore stated.

"That the plaintiff has thereby been damaged in the sum of ten thousand dollars.

"Wherefore the plaintiff demands judgment against the defendant for the sum of ten thousand dollars and costs."

In the interpretation to be placed upon language charging the publication of a libel, a court of justice is to put such construction upon the words which it contains as may be derived "as well from the expressions used as from the whole scope and apparent object of the writer." (*Spencer* v. *Southwick,* 10 Johns. 259; *Cooper* v. *Greely,* 1 Denio, 358.)

And not only is the language employed to be regarded with reference to the actual words used, but according to the sense and meaning under all the circumstances attending the publication which such language may fairly be presumed to have conveyed to those to whom it was published. So that in such cases the language is uniformly to be regarded with what has been its effect, actual or presumed, and its sense is to be arrived at with the help of the cause and occasion of its publication.

And in passing upon the sufficiency of such language as stating a cause of action, a court is to place itself in

the situation of the hearer or reader, and determine the sense or meaning of the language of a complaint for libelous publication according to its natural and popular construction. (Townshend on Libel and Slander, sec. 133.)

Applying the rules thus laid down to the construction of the publication complained of, as set out in the pleading, and taking in connection with it the other matters set out in the complaint, it seems evident that the plaintiff was charged with having been guilty of conduct which was calculated and did expose him to obloquy, as one untrue to a trust reposed in him by his fellow-citizens at Riverside and elsewhere, and if the charge was false, it was libelous.

To expose one to obloquy is to expose him to censure and reproach, as the latter terms are synonymous with the word "obloquy."

If under all the facts and circumstances as set out in the publication, taken together with those stated in connection with it in the complaint, plaintiff was not exposed to the censure and reproach of those at Riverside and elsewhere who read or heard read the publication concerning him, by some of whom it was alleged he had been trusted in an important matter, then we are mistaken both in the temper and disposition of men in like circumstances, and in the fair and unstrained interpretation of the language of that publication.

The complaint was sufficient under section 45 of the Civil Code.

The judgment should be reversed and cause remanded, with permission to the defendant to answer the complaint if so advised.

BELCHER, C. C., and SEARLS, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed and cause remanded, with permission to defendant to answer the complaint if so advised.