[Civ. No. 5792.   Third Appellate District.—January 31, 1939.]

IRA H. ROSENBERG et al., Respondents, v. J. C. PENNEY COMPANY (a Corporation) et al., Appellants.

Geary & Geary, C. J. Tauzer, Walter H. Linforth and William M. Cannon for Appellants.

Barrett & McConnell and A. Dal Thomson for Respondents.

PULLEN, P. J.—In 1865 Wolf Rosenberg, the father of plaintiffs herein, established a retail store in Healdsburg. In 1890 a partnership was formed between Rosenberg and Bush and the business was carried on by them as partners until 1908, when the firm of Rosenberg & Bush was incorporated. In 1919 Bush retired from the business and the corporation was dissolved. The business was then carried on as a partnership, the members of which were Esther C. Rosenberg, the widow of Wolf Rosenberg, and their two sons, Ira H. Rosenberg and Harold B. Rosenberg, the plaintiffs herein. In 1927 Esther C. Rosenberg died, and the business has since then been conducted by the two sons, as surviving partners.

In 1924 defendant J. C. Penney Company was conducting a similar business on the opposite side of one of the main streets of Healdsburg. On September 27th of that year the manager of the J. C. Penney Company placed in his store window a sample of "gym pants" or "shorts" which were then being offered for sale to the students of the local high school by the firm of Rosenberg & Bush. This display consisted of placards, comparing the garments offered for sale by the J. C. Penney Company, and similar garments purchased from plaintiffs. Upon these placards were legends, as follows:

"These shorts
were the Official Uniform
of the Healdsburg High School
to be purchased exclusively
from Rosenberg & Bush your
Home Owned Store since 1865.

Aren't you proud of it?
Both Garments Originally Same
Size. Sold as Pre-Shrunk.
The price of these
garments were originally
75c, later reduced to 59c
to meet our price."
(A pair of shorts was then
displayed with a sign,
"Size 32" upon them.)
"This garment has been laundered
and Shows the Actual Shrinkage.
The Tape Line Tells the Story."

Then follows an arrow pointing to a pair of shorts, with a card "Size 32" upon them. Opposite the latter pair of shorts, fastened to the edge of the first board, was a sign reading:

"Decide for Yourself.
This Garment is either
a poorly made second
or prison-made mer-
chandise.
Seams crooked.
Slovenly made.
Long Loose Stitches.

Weight before laundering 3¾ oz.
Weight after        "      3 oz.
Leaving ¾ oz. or 25% of
weight of cloth in starch
and filler.
Note the shoddy appearance,
the wrinkled waist and
hems of this garment.''

A board on the right displayed a garment of the defendant corporation, with the following signs:
''Draw your own conclusions.

    This is Our
    Own Garment.
    Priced to
    Sell at 59c.''

(A pair of shorts was then displayed with a sign, ''Size 32'', upon them.)

    ''Note the fine workman-
    ship Correct Pattern,
    Fullness of cut and sub-
    stantial quality of
    cloth.
    We think it is no more
    than fair that the Shoddy
    Garments of Rosenberg &
    Bush be replaced
    Free of Charge by them,
    And that they make good
    their loud and vociferous
    boast of selling only first
    grade merchandise.''

These placards remained in the window of J. C. Penney Company during all of the day of September 27th. Mr. Bowen, one of the defendants, and the general manager of the Healdsburg branch of the J. C. Penney Company, who personally arranged the display, has been an executive of the Healdsburg branch for some nine years preceding this incident, and had been previously employed by the company for at least five years in its Santa Rosa branch.

This dispute grew out of a recommendation by the athletic director of the Healdsburg high school that the students, in the interest of uniformity, purchase the type of gym suit

offered by Rosenberg & Bush. About that time the J. C. Penney Company displayed in their window a gym suit labeled "An Official California recommended gym uniform." Bowen also attempted to demonstrate to the athletic director, and to the members of the school board, that the Rosenberg & Bush garment was inferior to the Penney garment. Being unable to effect an adjustment with the director or the board, Mr. Bowen then stated to them that in the face of their refusal to correct the matter, he would have to place the facts before the public.

Upon the day of the appearance of the garments in the window of the J. C. Penney Company, one of the plaintiffs called upon Mr. Bowen and asked the reason for the display. Mr. Bowen then stated that the goods offered by Rosenberg & Bush were prison made goods, were seconds, and made of shoddy material, and that he was going to show the public the type of merchandise offered to the students of the high school. Mr. Rosenberg then asked Bowen if he would remove the placards, which he refused to do. At the second conversation Mr. Bowen stated he had investigated the statements appearing upon the placards in the window and he was satisfied they were true, and that he was ready to prove that fact.

The following day an action for libel was filed, alleging in greater detail the foregoing facts, and charging that said statements were false, libelous and unprivileged, exposed plaintiffs to hatred, contempt, ridicule and obloquy, and injured plaintiffs in their good name and reputation in business, and asked for general and punitive damages. To this complaint the defendants answered, denying the libelous character of the display or that plaintiffs had been damaged in any sum whatever.

On the trial of the cause, substantially the foregoing facts were established, and the jury awarded plaintiffs the sum of $10,000 actual damage, and $15,000 as punitive damage against the defendant J. C. Penney Company, and the sum of $250 as punitive damage against the defendant James R. Bowen.

The principal points urged by appellants for reversal are, first, that the complaint fails to state a cause of action in that plaintiffs have no legal capacity to sue; that the window display was not libelous *per se*; that the evidence was in-

sufficient to show that Bowen had authority to place the placards in the window; that the court erred in admitting and rejecting certain evidence, and in its instructions to the jury; that the evidence was insufficient to justify the verdict; that the verdict was excessive, both as to actual and exemplary damages, and was given under the influence of passion and prejudice.

■ The first point is that the complaint failed to state a cause of action, in that plaintiffs had no legal capacity to sue. This action was brought by the two plaintiffs as surviving partners of a firm which, some years prior to the libel, had consisted of themselves and Esther C. Rosenberg. Defendants contend that the plaintiffs did not own this joint cause of action and could not sue without joining the estate of Esther C. Rosenberg as plaintiff.

At the time in question the Probate Code, section 571, provided in part, as follows:

" . . . When, at the time of his death, a partnership existed between the decedent and any other person, the surviving partner has the right to continue in possession of the partnership, and to settle its business . . . The surviving partner must settle the affairs of the partnership without delay, and account to the executor or administrator, and pay over such balances as may from time to time be payable to him, in right of the decedent. . . . "

Section 2435 et seq. of the Civil Code provided that the death of a partner brought about the dissolution of the partnership and made it the duty of the surviving partner to account to the personal representative for the assets thereof. By these sections therefore, the surviving partners were entitled to continue in control of the business for the purpose of liquidation, subject to an obligation to account to the personal representative of Esther C. Rosenberg, the deceased partner. The fact that the business had been carried on by the surviving partners for some considerable length of time is not of itself material. If such delay was a matter of loss to the personal representative that would be a matter of which such representative could complain, but none other. The only interest of defendants would be to insure their protection against future liability for the same tort.

While in *Berson* v. *Ewing*, 84 Cal. 89 [23 Pac. 1112], the tort affecting the partnership business was committed prior

to the death of the partner, the court considered the question generally. That action was for the malicious prosecution of a civil action. It was there contended that inasmuch as a partner in liquidation was authorized to collect debts only, the surviving partner had no right to sue for damages for a tort. The court held, however, that by virtue of section 1585 of the Code of Civil Procedure (Prob. Code, sec. 571) providing that "a surviving partner has the right to continue in possession of the partnership and to settle its business . . . without delay", the surviving partner had the right to maintain the action, for "the power to settle gives full authority to the surviving partner to do everything that may be necessary to wind up the affairs of the partnership . . . ", and also construing section 2461 of the Civil Code, which provided that a surviving partner could collect *debts,* but could only release and compromise *claims,* the court holding debts and claims were there synonymous, said: "It would indeed be strange if a surviving partner could compromise any claim against the firm, but could neither compromise nor enforce one in favor of it."

This rule is also recognized generally in Corpus Juris and in Ruling Case Law, as follows:

47 C. J. 1085, section 689:

"It is a well established general rule that an action at law to enforce rights, claims or choses in action of a partnership which has been dissolved by the death of a partner is properly brought by the surviving partners, and it is neither necessary nor proper to join the representatives of the deceased partner as plaintiffs, although by virtue of statute a different rule sometimes exists."

20 Ruling Case Law, 1007:

"In all matters connected with a partnership dissolved by the death of a partner the surviving partner is the proper party to bring suit."

Appellants rely strongly upon the case of *Lewis* v. *Hayes,* 177 Cal. 587 [171 Pac. 293]. There was an action for libel in which special damages were claimed for injury to plaintiff's business. The business was owned by a copartnership, and plaintiff was one of the partners. The court held that all the partners must join in an action for damages to the partnership business. Under the facts there existing, however, the partnership consisted of two individuals, one of

whom alone brought the suit. We do not believe this case is in point, for there both partners were living. Here all of the surviving partners did join, which fulfills the requirements of good pleading.

Neither is *Wright* v. *Afro-American Co.*, 152 Md. 587 [137 Atl. 273, 52 A. L. R. 908], of aid to appellants. There a libel was published with reference to a banking house in which the plaintiffs were partners. The action was brought by all of the partners, who sued not as partners but in their individual right. The court there held that for a libel affecting a partnership all of the partners must sue jointly, but for damages to the plaintiffs as individuals, separate actions must be maintained. In that case also all of the partners were surviving. In the case at bar the existing partners were suing for the damage sustained by the business, and no attempt was made to recover for damages to the plaintiffs as individuals.

Appellants also cite 16 California Jurisprudence, 76, and 20 Ruling Case Law, 920, holding to the general effect that all partners must sue where the complaint declares on an injury to the partnership business. It is our construction of that rule, however, that all partners, then in being, must join.

Here it clearly appeared, both by the complaint and by the instructions of the court, plaintiffs were suing not for damages for themselves, but as surviving partners of a partnership that had been dissolved by the death of a partner; they were in effect trustees protecting one of the assets of their trust, which was the good name or good will of the former partnership, which plaintiffs allege had been injured by the statements of appellants.

Charged as the surviving partners were, by section 1585 of the Code of Civil Procedure, to settle the business of the partnership, it was their duty, and theirs alone, to protect such good will, and to turn it over unimpaired as an asset to those entitled thereto.

It is next contended that the window display was not libelous *per se*. Section 45 of the Civil Code defines a libel as follows:

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule,

or obloquy, or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.''

A libel *per se* is a writing which, upon its face, falls within the definition of a libel. In *Bates* v. *Campbell,* 213 Cal. 438 [2 Pac. (2d) 383], the court, after quoting the foregoing section, stated that such definition was very broad, included almost any language which, upon its face, had a natural tendency to injure a person's reputation, either generally, or with respect to his occupation.

If a publication is libelous *per se* it is not necessary to aver special damage, *Schomberg* v. *Walker,* 132 Cal. 224 [64 Pac. 290]. In Newell on Slander and Libel, fourth edition, page 170, the rule is expressed as follows:

''When language is used concerning a person or his affairs which from its nature necessarily must, or presumably will as its natural and proximate consequence, occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action and *prima facie* constitutes a wrong without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication; and this is all that is meant by the terms 'actionable *per se*', etc. Therefore the real practical test by which to determine whether special damage must be alleged and proven in order to make out a cause of action for defamation is whether the language is such as necessarily must or naturally and presumably will occasion pecuniary damage to the person of whom it is spoken.''

In construing language charged as libelous it is necessary to consider the publication as a whole (*Stevens* v. *Snow,* 191 Cal. 58 [214 Pac. 968]; *Bates* v. *Campbell, supra; Jimeno* v. *Commonwealth etc. Builders,* 47 Cal. App. 660 [191 Pac. 64]) and as pointed out in *Bettner* v. *Holt,* 70 Cal. 270 [11 Pac. 713], the court, in determining whether or not there is a libel *per se* must place itself in the position of a reader under the circumstances of the publication.

In examining the placards together and separately, in the light of the foregoing authorities, the trial court was correct in its conclusion that such published matter must be accepted as libelous *per se.*

[redacted] We are unable to reproduce in this opinion photographs in evidence, which are before us in the brief of respondents. In this exhibit, however, on one side is shown

garments taken from the stock of Rosenberg & Bush. On the other side of the window is a garment on sale by the J. C. Penney Company, and affixed to these garments were descriptive legends endeavoring to make invidious comparisons with plaintiffs' goods. Appellants argued that these placards amounted to mere legitimate criticism of a competitor's stock, and did not therefore constitute libel. However, from an examination of the legends hereinbefore set forth, the public would naturally infer from such inspection that the firm of Rosenberg & Bush was selling as first grade merchandise, garments which were shoddy, poorly made seconds, and prison made merchandise, which was being offered to the public as first grade merchandise. It is also charged that these garments sold by Rosenberg & Bush as first grade merchandise were so defective and contained so much starch and filler that they lost 25 per cent of weight after laundering, and that its customers had been defrauded by purchasing as preshrunk garments, those which were not preshrunk, and that the seams were crooked; that they had long stitches and were slovenly made; and that they were offered for sale despite the loud and vociferous boast of Rosenberg & Bush that they were selling only first grade merchandise. From the foregoing it is clearly apparent that Rosenberg & Bush were accused of fraud and deception and unfair dealing with their customers. Charges of this nature are libelous *per se.*

The reputation of a tradesman in the sphere in which he earns his living is a valuable asset and is entitled to the protection of the law. In *Moore* v. *Francis,* 121 N. Y. 199 [23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810], it is said:

''Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable. When proved to have been spoken in relation thereto, the action is supported, and unless the defendant shows a lawful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed . . . ''

Newell on Libel and Slander, fourth edition, 1924, p. 156, in discussing this matter places imputations against a man's business, profession or means of livelihood next to that of

his life or liberty, and says that while it would be difficult to reconcile all of the various decisions upon this subject, the general rule is apparent that words are actionable which directly tend to the prejudice of one in his office, profession, trade or business, and an action will lie for any words which prejudice him in such trade or employment, and although the statements may seemingly concern the goods only they may so reflect upon the merchant himself as to amount to a libel *per se*. Many cases could be cited to support this rule, for it is one of long lineage as is evidenced by *Linotype Co.* v. *British Empire Typesetting Machine Co.*, (1899) 81 L. T., N. S., 331, 15 Times L. R. 524; *Burnet* v. *Wells*, 12 Mod. 420, 88 Eng. Reprint, 1423; 36 Corpus Juris, 1188, section 88 et seq., Annotation, 48 L. R. A. (N. S.) 1214.

The placard charging the garments were prison made merchandise was particularly objectionable inasmuch as the Penal Code, section 679a, declares it to be a crime to sell or offer for sale any article manufactured wholly or in part by prison labor, except articles which are specifically sanctioned in law to be so sold.

Statutes of 1917, page 249, Deering's General Laws, Act 4636, also make it an offense to sell or offer for sale, articles for personal wear manufactured in penal institutions outside of California unless there is a designated label upon the goods, and a sign in a conspicuous place upon the premises that such goods are on sale; and the Statutes of 1929, page 1962, Deering's General Laws, Act 8062a, provide for the labeling of convict made goods. Mr. Bowen also admitted on the witness stand that he knew of the public prejudice against prison made merchandise in his community.

■ There are two classes of statements concerning the goods of a competitor, first, where the statement is made with reference to goods or products, but there is also included libelous words concerning the seller, which impute to him, in connection with the sale of such goods, fraud, dishonesty or questionable business methods; and, secondly, statements that go no further than to criticise the goods of a competitor, which criticism is based upon or appeals to a personal taste or preference of the buyer, but contains no imputation against the honesty or integrity of the merchant in the sale of the goods.

It is the claim of appellant that the window display in question falls under the second class and was merely legitimate competition. They argue that plaintiffs and J. C. Penney Company were striving for business along similar lines in the same community, and that they both wanted to sell athletic garments to the students of the local high school. The J. C. Penney Company had garments which it deemed superior to those of plaintiffs, and to demonstrate that fact they obtained a sample of the merchandise of plaintiffs, and demonstrated to the general public the result of laundrying, and merely placed the two competitive garments side by side for the general public to choose which of the two articles they would prefer. It needs but a reading of the placards to show that appellants went far beyond this legitimate comparison.

From the construction of the language placed by defendants upon the placards they next claim that the language was sufficiently ambiguous and susceptible to two meanings, one of them harmless and the other injurious, that it was necessary for the plaintiffs to plead by innuendo the facts upon which it relied to point out the injurious meaning of the writing. (*Bates* v. *Campbell, supra.*)

Appellants also point to the principle that where a publication is ambiguous, one harmless and the other injurious, the language complained of may not be extended or enlarged by the innuendo. Regardless of the fact, however, that plaintiffs in their complaint, did plead the innuendo, the language and meaning of the placards are so plain that it was not necessary to resort to the innuendo; and while some of the language may have been free from any libel, it is sufficient to support an action where the gist of the language contains the objectionable charge or insinuation, and here the charges upon the placards lead to the conclusion that plaintiffs were accused of dishonesty in dealing with their customers, thereby injuring the business and its good reputation.

It is next contended that the evidence is insufficient to show that Bowen had authority to place the placards in the window display, or that his action was ratified by the J. C. Penney Company.

The original answer admitted the defendants installed the window display, and at the opening of the trial they

sought to amend by alleging only that Bowen installed the display, thereby raising the question of the scope of Bowen's authority. This amendment was refused by the court. In ruling upon this question the trial court pointed out that the original answer admitted that the display in the show window was participated in by both defendants, which was a matter peculiarly within their knowledge, and that to require the plaintiffs at that stage of the proceedings to show the scope of authority of the local manager, would be placing upon plaintiffs a heavy burden and one that they should not be called upon to meet, particularly at that point of the proceedings. In thus ruling the court did not abuse its discretion.

The facts in evidence showed that Bowen was the general manager of the J. C. Penney Company at Healdsburg, and that as such manager he had charge of the window displays and also as to what goods were to be displayed and their manner of arrangement. No objection was made to this line of testimony at the time of its introduction.

■ Appellants introduced a "policy book" of the J. C. Penney Company, admonishing their managers to maintain a spirit of friendliness and courtesy toward their competitors. Clearly, however, the master is liable if he employs an employee to speak for him, and it is immaterial if, acting in the scope of his authority, he makes a mistake as to the truth or acts with a bad motive. (Restatement of the Law, Agency, p. 555, sec. 247.) Furthermore, it appears that at the time of the trial Bowen was still in the employ of the J. C. Penney Company, acting as manager, which of itself is some evidence of ratification to be considered with the other facts in the case. (*Sullivan* v. *People's Ice Corp.*, 92 Cal. App. 740 [268 Pac. 934]; *Edmunds* v. *Atchison, T. & S. F. Ry. Co.*, 174 Cal. 246 [162 Pac. 1038].)

■ Furthermore, in the amended answer of defendant corporation and Bowen was a plea of the truth of the statements made which operate as an adoption and approval of the libel. (*Tribune Assn.* v. *Follwell*, 107 Fed. 646.) It would therefore appear that respondents were justified in contending that defendant corporation was liable in compensatory damage, first, because the pleadings admitted Bowen's authority; secondly, the evidence showed his authority; thirdly, the secret instruction set forth in the policy book could not

be utilized to deny liability; fourthly, the acts of Bowen were ratified by his retention in the employ of the company, and by an amended answer filed by the defendant corporation.

In order to properly understand the claim of appellants that the court erred in admitting certain evidence, it is necessary to briefly recite certain facts not heretofore alluded to.

In September, 1934, Bowen inserted an advertisement in the local Healdsburg paper, reading in part as follows:

"Penney's have
Official California
Gym Togs at lower prices . . . "

Complaint was made to the Better Business Bureau of San Francisco by a man named Walters, who received his information from Ira Rosenberg, who was then president of the Home Owned Merchants Association. Letters from the Better Business Bureau were addressed to the J. C. Penney Company in San Francisco. What action, if any, was taken does not appear nor does it appear that Bowen had any knowledge of this complaint. At the trial the correspondence between the Better Business Bureau and the J. C. Penney Company was offered and received in evidence. Appellants claim that this evidence was improperly admitted, contending that if this evidence was admitted for the purpose of showing malice in fact, that it would be necessary for Bowen to have been acquainted with this matter and had been actuated thereby by ill will, and with intent to injure them. We believe, however, that appellants misconstrue the purpose of the evidence. The court, in passing upon its admissibility stated it would be admitted subject to being connected by positive proof of action or lack of action of the J. C. Penney Company, and bearing on the issue of malice. We find no subsequent motion to strike out this evidence on the ground that it had not been properly connected by further evidence. This point, however, becomes immaterial as far as Bowen is concerned by reason of our subsequent holding as to him.

Another citation of error by appellants was the admission in evidence of records relative to the financial standing of the J. C. Penney Company. On this issue plaintiffs introduced photostatic copies of original documents, pur-

porting to show assets of the J. C. Penney Company as of December 31, 1935, of over $74,000,000. This exhibit had superimposed upon the pages thereof a certificate from the secretary of the commonwealth of Massachusetts, and bearing the impression of the seal of that state, testifying to its correctness. Inasmuch as on this document appeared what purported to be the great seal of the commonwealth of Massachusetts, under section 372 of the Civil Code, the court took judicial notice of the seal, and in the absence of evidence to the contrary, accepted it as such, and it was properly admitted in evidence without further evidence authentication.

Many exceptions are pointed out as to the form of certificate attached, and to the nature of the document itself, but such respectable authority as Wigmore on Evidence, second edition, volume 2, page 618, and in volume 3, at page 563, justifies the admission of evidence in such form. This document was admitted undoubtedly to show the wealth of the defendant corporation. Regardless of that evidence, however, it appeared in the record that the J. C. Penney Company had stores in Healdsburg, Santa Rosa, Fairfield, Chico, New York and San Francisco, which could be considered by the jury in computing the wealth of defendant corporation. Further it appears in appellants' opening brief that J. C. Penney Company "maintains many stores in different states and in the different towns of each state"; that of itself undoubtedly is sufficient to bring before the jury the fact that the J. C. Penney Company was at least a business of wide interest and financial ability.

It was next urged that the trial court erred in rejecting evidence which was offered to prove that the business of plaintiffs had suffered no loss or detriment as a result of the display. The answer to this objection is that plaintiffs pleaded no special damages and therefore defendants should not be permitted to introduce evidence that there was in fact no special damage sustained. A similar situation existed in *Scott* v. *Times-Mirror Co.*, 178 Cal. 688 [184 Pac. 672, 12 A. L. R. 1007], where an attorney sued a newspaper company for injuries to reputation by a published libel. The court there said:

"The respondent is not required to prove, and in the nature of things cannot prove, the extent to which he has

been damaged by this libel, or of what legal fees he has been deprived through its circulation, or what clients he has lost because of it. It is well settled that in such cases as this a jury may consider as a basis for its award of actual damages all of such matters as those set out above, including the wide publicity given to the libel, plaintiff's prominence in the community in which he lives, his professional standing, his good name and reputation . . . ''

We can see no distinction between the injury to the attorney there involved and the damage here asserted. See, also, *Bennett* v. *Salisbury*, 78 Fed. 769; *Fish* v. *St. Louis County Printing & Publishing Co.*, 102 Mo. App. 6 [74 S. W. 641].

■ It is also claimed that the court erred in admitting evidence as to sales of garments similar to plaintiffs' gym suits in certain J. C. Penney Company stores. Here, over the objection of defendants, the witness was permitted to testify that his company sold the same kind of gym pants to the J. C. Penney Company stores at Fairfield during the summer of 1934, and no complaints in respect thereto were received by the J. C. Penney Company. To this evidence Bowen objected, claiming that the quality of goods sold in the J. C. Penney Company stores, with which he had nothing to do, could not be admissible against him. As to the J. C. Penney Company it was claimed they were not the manufacturer of the merchandise, and that the local managers, subject to certain limitations had authority to stock their stores in accordance with their best judgment. This evidence was received for the purpose of proving that the corporate defendant was not indulging in legitimate criticism of competitors' goods, and its motive was not that of protecting the community when they were selling the same goods in other localities.

Appellants' point is well taken as to the admissibility of this evidence against Bowen. Undoubtedly the court should have instructed the jury, in view of the objections of counsel, that this evidence was not received and should not be considered relative to Mr. Bowen. We can see no valid objection to the ruling of the court as to the J. C. Penney Company.

■ A witness was permitted to testify as to the good reputation of plaintiffs. Objection was interposed to this

line of evidence, and is now cited as error. We again find no error in this ruling. The witness was testifying as to no particular time but as to his familiarity generally with the reputation of the company over a period of some thirty-nine years. It was the business integrity of the company that was at stake, and although it changed its business structure from time to time it was practically a family business during its entire existence, and no time was specified by the witness.

Turning now to the instructions given by the court to the jury, which are criticised by appellants, we believe that what we have heretofore said as being our view of the law is sufficient answer to the various citations of error in the instructions. The errors urged are directed almost entirely to construction of law and therefore if the principles that we have heretofore announced are correct, the instructions based thereon must also be correct.

Some twenty citations of error are pointed out, but it will serve no useful purpose to discuss them in detail in view of the fact they are not sufficiently vital to affect the outcome of this action.

▮ It is claimed next that the evidence is insufficient to justify the verdict for more than nominal damages.

We approach now the question of damages. It will be recalled that the jury found for the plaintiffs, and assessed their damages in the sum of $10,000 actual damages, and the sum of $15,000 as punitive damages against the defendant, J. C. Penney Company, a corporation, and the sum of $250 as punitive damages against the defendant Bowen. Appellants argue with considerable force that inasmuch as we are here dealing with a dissolved partnership there is no entity with a reputation to destroy. The fact is that plaintiffs were suing as surviving partners of a partnership that had been dissolved by the death of Esther C. Rosenberg in 1927.

We have heretofore considered section 1585 of the Code of Civil Procedure, which provides that "a surviving partner has the right to continue in possession of the partnership and to settle its business . . . " From that language it is apparent that something remains after the death of a partner—good will, perhaps—and it is the duty of a surviv-

ing partner to protect such assets and distribute the residue to those entitled thereto.

In considering whether or not the awards were excessive, we realize the very familiar rule that to the jury, to a very large extent, is committed the responsibility of awarding compensation for an injury sustained. When the award, as a matter of law appears excessive, or where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice, the duty is then imposed upon the reviewing court to act. Examining first the award as against Bowen, it would appear to fall under the rule that where no compensatory damage is assessed against a defendant it is improper to levy exemplary damage. In *Haydel* v. *Morton*, 8 Cal. App. (2d) 730 [48 Pac. (2d) 709], the verdict read compensatory damages in the sum of $000, exemplary damages $10,000. The court there held that in such cases the award of punitive or exemplary damage could not be upheld. In *Clark* v. *McClurg*, 215 Cal. 279 [9 Pac. (2d) 505, 81 A. L. R. 908], the court held that exemplary damages were not recoverable in the absence of a showing of actual damage. The judgment against Bowen in the sum of $250 as punitive damages must therefore be set aside.

Referring briefly to the facts with reference to the actual damage sustained by plaintiffs, for which the sum of $10,000 was awarded against the J. C. Penney Company, we find two rival firms competing for the business of the local high school. The libel was by a display in the window of the J. C. Penney Company store, where it remained for only one day. The display was made on a Thursday in the town of Healdsburg, having a population of some 2,500. At the end of the day the objectionable display was removed, and no further reference made thereto.

Inasmuch as no special damages were alleged or proven, the award in the sum of $10,000 for such a libel impresses this court that there existed a feeling of prejudice against the chain store operated by the J. C. Penney Company.

As to the exemplary damage of $15,000 against the J. C. Penney Company, it must be remembered that it did not appear that the J. C. Penney Company directly authorized or knew of the display but are liable merely as employers of their local manager. It does not appear in what way the

J. C. Penney Company could have protected themselves against this act, as Bowen had been in their employ a number of years as manager, and it did not appear that he had at any previous time indicated an intention of exceeding the rules of good business ethics. It would appear that the award of $15,000 was actuated by some motive other than that required by legal standards.

The judgment against Bowen is reversed. If the respondents within seven (7) days from the date hereof, file herein a *remittitur* reducing the judgment of $10,000 compensatory damages to $5,000, and exemplary damages of $15,000 to $5,000, the judgment will stand affirmed. Otherwise the judgment is reversed, and the cause remanded for a new trial.

Thompson, J., concurred.