218 F.2d 432
 Martin GANG, Appellant,
v.
Howard R. HUGHES, RKO Radio Pictures, Inc., a Delaware Corporation, Carl Byoir and Associates, a New York Corporation, Hughes Tool Company, a Texas Corporation, et al., Appellees.
 No. 13828.
 United States Court of Appeals, Ninth Circuit.
 December 27, 1954.
 
 Milton A. Rudin, Los Angeles, Cal., for appellant.
 Bautzer, Grant, Youngman & Silbert, Beverly Hills, Cal., Wright, Wright, Green & Wright, Loyd Wright, Loyd Wright, Jr., Thomas A. Slack, Los Angeles, Cal., Raymond O. Cook, Houston, Tex., for appellees.
 Before STEPHENS and CHAMBERS, Circuit Judges, and McLAUGHLIN, District Judge.
 CHAMBERS, Circuit Judge.
 
 
 1
 Martin Gang, plaintiff-appellant, is a lawyer who has practiced in Los Angeles County, California, for some twenty-seven years. The defendants-appellees are citizens of states other than California. It seems fair here to characterize Howard Hughes, president of Hughes Tool Company, as the principal defendant. Hughes Tool and RKO Radio Pictures, Inc., companies in which Hughes is substantially interested, are other defendants. Also, another defendant is Carl Byoir and Associates, a corporate public relations firm alleged to be employed by Hughes Tool Company and Hughes, individually.
 
 
 2
 The amended complaint says that Byoir is a publicity firm employed for the purpose of getting statements published in an effort to create a good reputation for Hughes as an upright, honest and just person and as a person to be admired by the public.
 
 
 3
 Gang, it seems, in 1952 represented Jean Simmons and Stewart Granger in litigation against Hughes and RKO in the United States District Court for the Southern Division of California. In July, 1952, Gang obtained a settlement for Simmons and Granger which required RKO to pay Gang's attorney fees in the amount of $35,000. Then it is said that thereupon the defendants made statements to the reporters representing newspapers and magazines which resulted in the publication of such items as:
 
 
 4
 1. "* * * That Gang, the Grangers' attorney, had refused to consent to settlement until he got his money." 2. "* * * That he (Hughes) was paying Gang's fees because the attorney had insisted upon immediate payment."
 
 
 5
 In an original and an amended complaint herein Gang claims that the publication was libelous and slanderous per se.[1] Stolidly he refuses to amplify with any reference to extrinsic matter of innuendo and he alleges only general damages of one million dollars. Also, he asks for his attorney fees herein and punitive damages of one million dollars. The district court has held the statements not libelous or slanderous per se, and has dismissed plaintiff's complaint.[2] The district court expressed an opinion that the remarks were complimentary to Gang.
 
 
 6
 Gang says the single question here is whether the utterance to reporters of papers and magazines and the subsequent publication are:
 
 1. Complimentary to Gang as an attorney, or
 
 7
 2. Accuse him of unethical conduct.
 
 
 8
 This court states its answer at the outset. The remarks are neither complimentary nor do they accuse Gang of unethical conduct. The remarks are just rather silly. The second statement "that he (Hughes) was paying Gang's fee because the attorney had insisted upon immediate payment" perhaps is subject to the inference that Hughes was "sore" because he had to pay Gang's fees.
 
 
 9
 Gang also states his burden here as being that the publication accuses him of unethical conduct in that the statement infers that he refused to permit his clients to settle a pending lawsuit and to dismiss the lawsuit unless and until his fees were paid. But the publication does no such thing. Wherein does the statement suggest in any way that Gang was doing anything to Hughes that Granger and Simmons didn't want done? Should it be presumed that Granger and Simmons didn't want Gang paid? Should it be assumed that Granger and Simmons were charity cases and that somehow by insisting on the fees, not from his own clients, but from the legal enemy, Hughes, that somehow Gang was unfairly and unfaithfully depriving his clients of something?
 
 
 10
 It is to be assumed that the public knows that lawyers work for fees when the client is able to pay. There is no suggestion here that Granger and Simmons or Hughes couldn't pay. The case might be otherwise if the allegation were that a minister of the gospel had refused to conduct services for a dead man until someone paid him. That probably would be libelous per se.
 
 
 11
 Gang places heavy reliance upon Bates v. Campbell, 213 Cal. 438, 2 P.2d 383. There, Rosalind Bates, a former publicity agent of the Los Angeles Bar Association sued Kemper Campbell, president of the association, for having written about her, inter alia:
 
 
 12
 "* * * Miss Bates without permission or consent (emphasis supplied) continued to use bar association stationery and failed to notify the metropolitan papers of her change of status and in using her articles it was assumed that she still represented the bar association * * *."
 
 
 13
 Positively it was implied that Miss Bates did something her former employer did not want done. Also, it was held that she had occupied a position of trust. Therefore, it was right to conclude that the publication charged her with violating the residual obligations that linger on with a discharged or former trustee.
 
 
 14
 As pointed out in Bettner v. Holt, 70 Cal. 270, 11 P. 713, words are to be interpreted in the ordinary and probable meaning that the average reader would get. It does not seem that any ordinary, average reader would draw the conclusion that what the defendants here said or caused to be said about Gang meant that he had been unfaithful to his trust in any way. If, as in the Bates case, Hughes had said or implied that what Gang did about his fees was without his clients' "permission or consent" then libel per se would be readily apparent.
 
 
 15
 Gang puts his finger on Section 6068 (g) of the Business and Professions Code of the State of California, Rules 4 and 7 of Rules of Professional Conduct of the State Bar of California, and Canon 14 of the American Bar Association. Serially they are as follows:
 
 
 16
 Section 6068 (Listing duties of an attorney):
 
 
 17
 "(g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest."
 
 Rule 4:
 
 18
 "A member of the State Bar shall not acquire an interest adverse to a client."
 
 Rule 7:
 
 19
 "A member of the State Bar shall not represent conflicting interests, except with the consent of all parties concerned."
 
 Canon 14:
 
 20
 "Controversies with clients concerning compensation are to be avoided by the lawyer so far as shall be compatible with his self-respect and with his right to receive reasonable recompense for his services; and lawsuits with clients should be resorted to only to prevent injustice, imposition or fraud."
 
 
 21
 Stating these precepts of a great profession does not prove that the Hughes' statements in their natural meaning accused Gang of violating any of his many obligations of honor to Jean Simmons and Stewart Granger.
 
 
 22
 The judgment below is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Civil Code, § 45. "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."
 Civil Code, § 45a. "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. Special damage is defined in Sec. 48a of this Code."
 Civil Code, § 46. "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:
 * * * * * *
 "3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits."
 
 
 [2]
 The proceedings below did not reach the stage of an answer from defendants. There is no pleading by any party that the statements made by Hughes or on his behalf are true or false