NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1594, 05-1032

KYLE BATEMAN and ACTION TARGET, INC.,

Plaintiffs-Appellants,

v.

POR-TA TARGET, INC. (also known as Porta Target),

Defendant-Cross Appellant.

_____

DECIDED:  September 1, 2005

_____

Before MICHEL, Chief Judge, RADER and LINN, Circuit Judges.

LINN, Circuit Judge.

Kyle Bateman and Action Target, Inc. (collectively, "Action") appeal from the decision of the United States District Court for the Northern District of California ("district court") granting the motion of Por-Ta Target, Inc. ("Porta") for summary judgment of non-infringement of U.S. Patent No. 5,822,936 ("the '936 patent").  See Bateman v. Por-Ta Target, Inc., No. 3:01-CV-05599-JL (N.D. Cal. July 28, 2004) ("Non-infringement Order").  Porta cross-appeals from the decision of the district court granting Action's motion for summary judgment on Porta's counterclaims for, inter alia, false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and trade disparagement.  See Bateman v. Por-Ta Target, Inc., No. 3:01-CV-05599-JL (N.D. Cal. July 28, 2004)

("Counterclaim Order"). Because the district court properly granted Porta's motion for summary judgment of non-infringement and properly granted Action's motion for summary judgment for Porta's counterclaims of false advertising and trade disparagement, we affirm.

## I. BACKGROUND

The '936 patent is generally directed to a system for modularly fabricating bullet stops for live-fire shoot houses. The bullet stops are constructed from bullet proof plates placed adjacent to each with a gap therebetween. A facing strip covers the gap from one side, and a backing strip or a series of backing washers cover, or partially cover, the gap from the opposite side. A bolt extends through the facing strip and backing pieces and through a nut such that when the assembly is tightened it clamps the plates together. See '936 patent, Abstract, Fig. 5. The '936 patent is aimed at addressing the drawbacks associated with prior art systems, which exhibited problems attributed to "welding, cutting, special manufacture of component parts and direct fastening through holes in the respective plates." '936 patent, col. 3, ll. 11-13.

The '936 patent contains a total of 13 claims, with 5 independent claims. Independent claim 1, which is representative of the asserted claims, recites, with the terms at issue underlined:

> 1. An interconnect system for fabricating modular bullet deflecting devices, the system, when assembled, comprising:
>
> a plurality of metallic plates, each plate having at least one lateral edge juxtaposed with a lateral edge of another metallic plate;
>
> at least one facing strip disposed along the juxtaposed

lateral edges of the plates so as to cover the <u>juxtaposed</u> lateral edges of the metallic plates;

<u>clamp means</u> releasably attached to the at least one facing strip for holding the facing strip in secure engagement with the metallic plates adjacent the lateral edges to apply a clamping force and thereby hold the metallic plates in rigid connection with one another and forming a continuously bullet resistant joint; and

damping means for damping the transfer of vibrational energy between the plates.

'936 patent, col. 8, ll. 30-45.

Porta manufactures and sells bullet stops fabricated from steel plates that have holes in them. Prior to the issuance of the '936 patent, Porta cut holes in the plates with a torch. From 1999, Porta began custom ordering plates pre-cut with holes. Porta connects the steel plates by placing bolts through the holes, which it contends is a "fastening mechanism."

In May 1997, Porta built a shoot house containing bullet shields for the Dallas Sheriff's Department. Action then hired an independent third party to evaluate the house. The third party tested the structure, videotaped the tests, and gave a favorable evaluation, stating that "none of the rounds penetrated the seam" and that "there was [sic] no signs of damage." The video showed a light dust-like residue emerging from the seams during shots, which the third party characterized as "very fine, like a dust" and stated that "no metal-like fragments could be seen."

Ten days after receiving the evaluation, Action sent a letter to the Dallas Sheriff's Department based upon the third party's evaluation, stating

[W]e strongly believe that the joint system of the Porta[] shoot house creates a VERY SERIOUS risk of injury to firing range visitors. The Porta[] joint appears to be VERY UNSAFE and may result in death or

injury to users. The Porta[] joint system does NOT contain or stop bullet fragments from exiting the shoot house joints (Please See The Video Footage regarding This Very Hazardous Problem).

Between 1997 and 1999, Action sent letters to other potential customers of Porta, making similar allegations.

On December 28, 2001, Action filed suit against Porta alleging patent infringement. Porta denied infringement and filed counterclaims alleging, inter alia, false advertising under the Lanham Act § 43(a) and trade disparagement under California law based on Action's numerous statements about Porta's products. The district court held a Markman hearing and initially construed various claim terms. Thereafter, the parties filed cross motions for summary judgment on infringement and on Porta's counterclaims.

On July 28, 2001, the district court revised its initial claim construction and granted Porta's motion for summary judgment of non-infringement based on the revised construction. The district court construed "clamp means" as a means-plus-function limitation. As to its function, the district court held that the "the function of the 'clamp means' is that of exerting frictional force such that metal plates are held in rigid connection to one another." Non-infringement Order at 12. The district court further identified the nuts and bolts together with the facing and backing strips as the structure corresponding to the "clamp means." Id. at 17. The district court held that Porta did not infringe the asserted claims of the '936 patent, either literally or under the doctrine of equivalents, because the accused device did not utilize a frictional force as required by the "clamp means," id. at 22, did not have a channel between adjacent plates as

required by the term "juxtaposed," id. at 29, and had plates with holes, which were disclaimed in the '936 patent, id. at 23.

In a separate order, the district court granted Action's motion for summary judgment on Porta's counterclaims for false advertising and trade disparagement. See Counterclaims Order. Focusing on the harm element of the Lanham Act false advertising claim, the district court found that Porta failed to show any specific harm caused by Action. Id. at 2-6. The district court further held that the Action's remarks did not constitute "libel per se" because they did not impugn the reputation of Mr. Scholem, the business owner. Id. at 9.

On September 13, 2004, the district court entered final judgment. Bateman v. Por-Ta Target, Inc., No. 3:01-CV-05599-JL (N.D. Cal. Sept. 13, 2004). Action timely appeals and Porta cross-appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. ANALYSIS

### A. Standard of Review

"We review a district court's grant of summary judgment de novo." See Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307 (Fed. Cir. 1998). If there are no material facts in dispute precluding summary judgment, "our task is to determine whether the

judgment granted is correct as a matter of law." Marathon Oil Co. v. United States, 177 F.3d 1331, 1337 (Fed. Cir. 1999).

Claim construction is an issue of law, see Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996), that we review de novo, see Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); Phillips v. AWH Corp., 415 F.3d 1303, 1328 (Fed. Cir. 2005) (en banc). A district court's "determination of the claimed function and corresponding structure of a mean-plus-function claim limitation is a question of law, reviewed de novo." ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1087 (Fed. Cir. 2003). Infringement, whether literal or under the doctrine of equivalents, is a question of fact. See Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

We review false advertising claims under section 43(a) of the Lanham Act in accordance with the law of the regional circuit within which the case arose, which is in this case, the Ninth Circuit. See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1447 (Fed. Cir. 1993). Whether a particular set of facts constitutes libel per se, as defined by the California Civil Code section 45, is a question of California law, reviewable de novo. See Rodriguez v. Panayiotou, 314 F.3d 979, 983 (9th Cir. 2002).

B. Discussion

1. Non-infringement

Action argues that the district court erred in granting summary judgment by concluding that Porta did not meet the "juxtaposed" and "clamp means" limitations, and that the '936 patent disclaimed plates with holes. Action further argues that the district court improperly granted summary judgment for claim 10, which does not contain a

"clamp means" limitation, and improperly relied on expert testimony to construe claims. Porta responds that the district court correctly construed these limitations without relying on expert testimony, correctly concluded that the patent disclaims holes in metal plates, and claim 10 is not properly the subject of appeal. Because we conclude that the district court correctly identified the structure corresponding to the "clamp means" limitation, and because summary judgment of non-infringement was proper on that basis, we do not consider Action's other arguments.

As an initial matter, the parties agree, and the district court properly determined, that "clamp means" is styled in mean-plus-function format pursuant to 35 U.S.C. § 112, paragraph 6. The "clamp means" limitation appears in independent claims 1, 4, 8, and 13. Claim 10, the sole remaining independent claim, does not contain the phrase "clamp means." However, as Porta correctly points out, Action abandoned this claim during litigation stating in its "Memorandum in support of motion for partial judgment on the issue of infringement and motion for entry of an injunction" that "[c]laim 10 was withdrawn by Plaintiffs due to questions raised in the reissue proceedings." Claim 11 and 12 depend from withdrawn claim 10, and claim 11 explicitly recites a "clamping means." Thus, we conclude that all the asserted claims at issue, namely, claims 1-9 and 11-13, include the "clamp means" limitation.

Under paragraph 6 of section 112, "the claimed function of the ["clamp means"] must be identified and then the specification must be examined to identify the structure that performs that function." Generation II Orthotics, Inc. v. Med. Tech., Inc., 263 F.3d 1356, 1363 (Fed. Cir. 2001). In this case, the district court identified the claimed function as "exerting frictional force such that metal plates are held in rigid connection to

one another." Non-infringement Order at 12. The function recited in claim 1 is "holding the facing strip in secure engagement with the metallic plates adjacent the lateral edges to apply a clamping force and thereby hold the metallic plates in rigid connection with one another." '936 patent, col. 8, ll. 40-44. Claims 4, 8, and 13 recite similar functions. See id., col. 8, ll. 60-65, col. 9, ll. 24-28, col. 10, ll. 31-34. Because "[§ 112, ¶ 6] does not permit limitation of a mean-plus-function claim by adopting a function different from that explicitly recited in the claim," Micro Chem. Inc. v. Great Plains Chem. Co., Inc., 194 F.3d 1250, 1257 (Fed. Cir. 1999), the district court erred in identifying the claimed function. However, that error is harmless in view of the district court's proper identification of the structure corresponding to the claimed function.

"A means-plus-function claim encompasses all structure in the specification corresponding to that element and equivalent structures." Id. at 1258. Referring to the embodiment of Figures 1 and 2 of the '936 patent, the specification discloses that "[a] nut 34 is then attached to the plow bolt 22 and tightened until the backing washer 30 and the facing strip 14 are held firmly against the plates. When the nut 34 has been tightened sufficiently, the facing strip 14 and the backing washer 30 hold the plates 10 in rigid attachment." '936 patent, col. 5, ll. 34-39. The specification also states that the bolt extends through the channel between the plates. See id., col. 5, ll. 29-31 and Figure 2. In reference to the embodiment of Figure 3, the specification discloses that "[t]he plates are held together by the facing strip (not shown) and the backing washer 30, due to force applied by the plow bolt 22 and the nut 34." Id., col. 5, ll. 46-48. Figure 3 clearly shows the bolt passing through a gap between the plates. In the embodiments of Figures 4 through 8, the clamping of the plates together is accomplished by the

combination of the facing strip, backing washer, and a bolt passing through a gap between the plates and terminating in a nut on the opposite side. These are the structures disclosed that correspond to and perform the claimed function of "holding the facing strip in secure engagement with the metallic plates adjacent the lateral edges to apply a clamping force and thereby hold the metallic plates in rigid connection with one another." Thus, in accordance with § 112, paragraph 6, the "clamp means" limitation is properly construed as covering these structures and their equivalents. See Micro Chem., 194 F.3d at 1258 ("When multiple embodiments in the specification correspond to the claimed function, proper application of § 112, ¶ 6 generally reads the claimed element to embrace each of those embodiments.").

"[A]n accused device literally infringes a claim element under § 112 ¶ 6 only if it is insubstantially different from the corresponding structure in the patent specification." Ishida Co. v. Taylor, 221 F.3d 1310, 1317 (Fed. Cir 2000). The "insubstantial difference" analysis "requires that a determination of whether the way the accused structure performs the claimed function, and the result of that performance, are substantially different from the way the claimed function is performed by the corresponding structure … described in the specification, or its result." Id. (internal quotations omitted).

The accused device utilizes "specially manufactured metal plates with holes drilled or punched in them." Non-infringement Order at 10. In the accused device the way the plates are held together is by passing "bolts [through] holes drilled at the top, middle, and bottom of a facing strip, backing strip, and the plate." Id. at 25. Further, as a result of this way of fastening the plates, the district court found that "the plates can

never fall away from one another because the bolts pass through the facing strip, backing strip, and metal plate, thereby providing a structural impediment to their separation." Id. at 25.

In contrast to the accused device, each of the embodiments disclosed in the '936 patent requires a bolt passing through a gap between the metal plates and through a facing strip, backing washer, and a nut to clamp the plates together. As the district court correctly observed, "[i]f there was no channel, the washer, as backing means, would only butt up against one of the larger panels and therefore not exert the required clamping pressure on the two panels." Id. at 24. Furthermore, the district court found that, as a result, unlike the accused device, "[i]f one were to loosen the nuts of the '936 patent device, the plates would fall apart." Id. at 25.

For the foregoing reasons, the accused device achieves the recited function of the "clamping means" in a substantially different manner than do the structures in the '936 patent. Accordingly, the district court properly concluded that Porta does not literally infringe the asserted claims of the '936 patent.

Action also challenges the district court's grant of summary judgment of non-infringement under the doctrine of equivalents. For means-plus-function limitations, the doctrine of equivalents reduces to whether or not there is an "insubstantial difference" between the limitation's corresponding structure and any after-invented technology found in the accused device. Ishida, 221 F.3d at 1317. Where, as here, the equivalence issue does not involve later-developed technologies, "a finding of non-equivalence … preclude[s] a contrary finding under the doctrine of equivalents."

Chiuminatta, 145 F.3d at 1311. Thus, we affirm the district court's grant of summary judgment of non-infringement under the doctrine of equivalents as a matter of law.

## 2. Cross appeal

Porta argues that the district court erred in granting summary judgment against its false advertising and trade disparagement counterclaims by concluding that Porta had failed to present sufficient evidence of damages to create a genuine issue of material fact as to each count. Specifically, Porta contends that it was forced to expend significant personnel hours addressing inquiries from potential customers resulting from Action's statements, was forced to prepare and distribute safety manuals, and had to obtain ISO 9001-2002 certification for its products. Porta further argues that the district court improperly granted summary judgment on its trade disparagement claim because Action's statements amounted to libel per se, and therefore does not require proof of special damages.

Action responds that the district court properly granted summary judgment because Porta failed to show harm or causation. Action further contends a claim for libel per se is precluded because its statements were directed at the quality of Porta's products and did not impugn the character of Scholem, the business owner.

At the summary judgment proceeding, Porta presented a declaration from Scholem to support its contention that Porta had to expend significant personnel resources. The district court, observing that the deposition testimony of Scholem contradicted the statements in his declaration, found that the only efforts described by Scholem were a phone call or a letter, and Porta failed to provide any "information about the resources it claims to have expended addressing inquiries." Counterclaim Order at

3. The district court further found that Porta failed to identify any projects on which it was not invited to bid. Id. at 4. The district court also noted that Porta failed to contradict evidence that Action's statements had no effect on their purchasing decisions. Finally, the district court observed that obtaining ISO certification would be a matter of common practice in the field of live-fire shoot houses. See id. at 6. We agree with the district court that the cumulative evidence submitted by Porta is insufficient to permit an inference of harm, even when viewed in a light most favorable to Porta. Thus, the district court did not err in granting summary judgment against Porta's claim for false advertising.

Porta cites Rosenberg v. J.C. Penney Co., 86 P.2d 696 (Cal. 3d Dist. Ct. App. 1939), to support its contention that Action's statements constitute libel per se. Porta's reliance on Rosenberg, however, is misplaced. In Rosenberg, the court concluded that J.C. Penney Company's disparaging remarks amounted to libel per se because "it [was] clearly apparent that [the competitors] were accused of fraud and deception and unfair dealing with their customers." Id. at 702; see also Barnes-Hind, Inc. v. Allergan Pharm., Inc., 181 Cal. App. 3d 377, 386 (Cal. Ct. App. 6th 1986) (holding that statements that did not impute to the business owner, in connection with the sale of goods, fraud, dishonesty, or questionable business methods were not libel per se). In this case, however, the district court correctly concluded that Action's statements do not impugn Porta's reputation but rather address the quality of Porta's products. For this reason, plaintiff's claim of libel per se must fail. Accordingly, we affirm the district court's grant of summary judgment against Porta's claim of libel per se.

## III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment of non-infringement is affirmed. We also affirm the district court's grant of Action's motion of summary judgment against Porta's claim for false advertising under the Lanham Act and trade disparagement under California law.