[Civ. No. 16732. First Dist., Div. One. July 27, 1956.]

KATHERINE M. CLAY, Respondent, v. ANTHONY G. LAGISS, Appellant.

Edmund S. Barnett and John B. Kramer for Appellant.

Harold H. Turner for Respondent.

WOOD (Fred B.), J.—In this action for damages for slander, judgment awarding $4,500 compensatory damages and $500 punitive damages was rendered in favor of plaintiff against defendant Anthony G. Lagiss.

(1) *Defendant claims he was prevented from having a fair trial by the asserted prejudicial misconduct of plaintiff's counsel in referring to other controversies involving the defendant.*

In his opening statement to the jury, plaintiff's counsel said he would prove that the defendant's slanderous remarks were motivated by his desire to make an illegal profit

by persuading certain buyers of land to pay more than their contracts called for; that plaintiff, consulted by some of the buyers, advised them not to accede; and that defendant to gain his end sought to discredit plaintiff in the eyes of said buyers. Defendant made no objection whatsoever to this portion of plaintiff's opening statement.

When plaintiff offered in evidence a deposit receipt signed by one of these buyers, the defendant objected to introduction of the document. Plaintiff's counsel explained that plaintiff had typed these and other contracts and had been asked by these buyers what they should do about it, and she advised them "and then the defendants heard about this and were telling these things about Mrs. Clay in order that the buyers would lose confidence in her, for their illegal motive." Defendant now criticizes this statement for the use of the word "illegal." The objection comes too late. Similarly, in response to an objection to the offer of a letter signed by one of these buyers, plaintiff explained to the court that she wanted to "show the motive. It shows the motive, that he [defendant] was extracting illegal payments." Defendant now, for the first time, criticizes the use of the word "illegal." His objections at the trial related to the relevancy of the documents. He took no exception to the explanatory remarks of plaintiff's counsel.

Defendant complains of the following question asked by plaintiff of one of these buyers, "did you receive the full refund that you were entitled to?" Defendant is in no position to complain for upon his cross-examination of this witness he brought out the fact that a refund had been obtained. Also, his only objection to the quoted question was that the finding of the court in the suit in which the witness obtained the refund was all that she would be entitled to, whereupon plaintiff reframed the question asking how much of a refund the witness did receive, to which the witness answered without objection.

Another passage which defendant cites as misconduct of the plaintiff is simply a ruling by the court that evidence of the type under consideration is limited to showing that a controversy had existed at the time the asserted slanderous remarks were made, not to go into the merits of any such controversy.

Upon cross-examination of one of plaintiff's witnesses defendant asked (concerning a certain portion of the witness' testimony) whether he had fully narrated the same incident

previously before a justice of the peace. Upon redirect, plaintiff asked the witness who the parties in the justice court case were and brought out the fact that the witness was plaintiff and Diablo Annex Builders (among the defendants herein) were defendants. Defendant Lagiss invited this information by referring to the former suit. The information as to the parties and the nature of the controversy in the former suit tended to show that the witness, when testifying in the former suit, had no occasion to mention defendant Lagiss' defamatory remarks.

Upon cross-examination of defendant, plaintiff asked him (concerning his controversy with one of these buyers) if the question did not arise as to why it was stated in the escrow instructions that so much was due for an interim occupancy charge and why the loan had been raised. Defendant answered "Yes." His counsel objected merely because it was a compound question and then defendant volunteered that he wanted to qualify the answer and, upon his counsel's consenting, proceeded to explain his answer. We see no prejudicial misconduct in that.

Defendant testified that he took certain escrow instructions to Mr. Alfano, one of the buyers, not to get him to sign but merely to explain the instructions as best he could, and if it met with Alfano's approval Alfano would sign them, but if not, he could do what he pleased. Plaintiff then asked defendant "And didn't you tell him that the interest on their loan would rise and they'd better get it settled quick?" This question, particularly in view of defendant's testimony that he went to Alfano merely to explain, tends to show there was a controversy. We do not view it as an attempt upon the part of plaintiff's counsel to go into the merits of the controversy.

In several of these instances, as already noted, the point under discussion is without a sound basis in fact, and in the few remaining instances a simple admonition to the jury to ignore the remarks, if defendant had requested the same, would have avoided any possible prejudice to defendant's case, especially in view of the fact that defendant's slanderous remark was *ipso facto* actionable, charging, as it did, the commission of a felony, the stealing of $600. The witness to whom this utterance was made was not impeached upon cross-examination. If the jury believed the utterance was made, they would necessarily have come in with a verdict for the plaintiff. There is no showing in the record that they had

grounds to believe otherwise, except defendant's denials, and there was ample evidence that at other times and to other persons defendant had spoken derogatorily of the plaintiff. The court properly and adequately cautioned the jury to distinguish between facts testified to by the witnesses and statements made by the attorneys during the trial or in their arguments, and to disregard any statement not supported by the evidence.

(2) *For the purpose of showing malice, plaintiff elicited testimony from each of two witnesses that defendant had made other derogatory remarks concerning plaintiff*; one, to the effect that she was "a crazy old woman . . . and that she belonged in an institution and that they were thinking about putting her there"; the other, referred to her as "this crazy old woman Mrs. Clay . . . that had mistyped these move in letters . . ." In each case, defendant's counsel asked the witness if he believed the quoted statement, but an objection that the question was irrelevant was sustained. Defendant contends that the witness' belief or disbelief of the truth of the statement bore upon the question whether defendant meant what he said or was speaking in jest. ▮ The tenor of defendant's statements (the spirit in which made) would have been relevant to the question whether their utterance evidenced malice, but the witness' belief as to the truth of the things said had no logical bearing on that question.

(3) *Defendant assigns as prejudicial error the disallowance of questions designed to elicit from plaintiff the amount of her income during the three years immediately following the utterance of the slanderous remarks sued upon.* Defendant sought to show that plaintiff suffered no loss in business income.

▮ However, plaintiff pleaded only general damages. It is true that in paragraph VI of the complaint it was averred that the false statement alleged "has caused plaintiff great humiliation, shame, mortification, and grievous mental pain and suffering, and tends to injure her personal and business reputation," but in paragraph VII plaintiff alleged her compensatory damages without pleading any items of special damages, as follows: "By reason of the said false statement plaintiff has been damaged in the sum of Thirty Thousand Dollars . . ." As stated in *Rosenberg* v. *J. C. Penney Co.,* 30 Cal.App.2d 609, 625 [86 P.2d 696], the "answer to this objection is that plaintiffs pleaded no special damages and therefore defendants should not be permitted to introduce evidence that there was in fact no special damage sustained."

We see nothing inconsistent with this ruling in *Scott* v. *Times-Mirror Co.*, 181 Cal. 345 [184 P. 672, 12 A.L.R. 1007], particularly in view of the following statement at page 365: "The respondent is not required to prove, and in the nature of things cannot prove, the extent to which he has been damaged by this libel, or of what legal fees he has been deprived through its circulation, or what clients he has lost because of it."[1]

(4) *The slander here involved was uttered June 1, 1953. In an endeavor to show that plaintiff's reputation was bad prior thereto, defendant asked a certain witness (who disavowed having known plaintiff's reputation on June 1, 1953) whether the witness later learned what plaintiff's reputation was prior to June 1, 1953.* Defendant assigns disallowance of this question as prejudicial error. The witness was not a member of plaintiff's community until sometime in June, 1953. ■ "As general reputation consists of the estimation in which one is held in the community in which he resides, it can only properly and safely be testified to by a member of the community; it is the opinion of a member of a community as to the estimation in which another who moves in it is held generally by that community. Such member has the means of knowing what that general reputation is and can properly speak of it." (*Tingley* v. *Times-Mirror Co.*, 151 Cal. 1, 27 [89 P. 1097]; see also *Orloff* v. *Los Angeles Turf Club*, 36 Cal.2d 734, 738-739 [227 P.2d 449].) This principle applies equally to a case such as the instant case in which it is sought to qualify a witness to testify concerning a person's "reputation with reference to her business as a real estate salesman."

(5) *Defendant asserts error in the disallowance of a question he addressed to the plaintiff seeking to show that Mr. Alfano (to whom defendant made the defamatory remarks here involved) continues to hold plaintiff in high regard.* Defendant apparently claims this was an effort to show miti-

---

[1]This clear statement was not modified or withdrawn by the statement which immediately followed it: "It is well settled that in such cases as this a jury may consider as a basis for its award of actual damages all of such matters as those set out above, including the wide publicity given to the libel, plaintiff's prominence in the community where he lives, his professional standing, his good name and reputation, his injured feelings and his mental sufferings." (P. 365 of 181 Cal.)

The latter statement obviously refers to factors which a jury may well consider in fixing general damages and has no reference to the issues which a plea of special damages might present.

gation of damages in view of the fact that plaintiff alleged that she sustained mental suffering, shame, mortification and injury to her personal and business reputation. ■ However, as we have already noted, plaintiff pleaded general, not special, damages and where, as here, the utterance is slanderous *per se,* damages are presumed and evidence tending to show lack of injury to the reputation is inadmissible. (*Schomberg* v. *Walker,* 132 Cal. 224, 230 [64 P. 290]. See also *Clark* v. *McClurg,* 215 Cal. 279 [9 P.2d 505, 81 A.L.R. 908].)

■ The "mitigating circumstances" which section 461 of the Code of Civil Procedure allows the defendant to prove in a situation such as this are those which tend to show that the defendant in speaking the slanderous words acted in good faith, with honesty of purpose, and not maliciously. (*Davis* v. *Hearst,* 160 Cal. 143, 192, 195 [116 P. 530]; *Turner* v. *Hearst,* 115 Cal. 394, 401-402 [47 P. 129]; *Plumb* v. *Stahl,* 54 Cal.App. 645, 649 [202 P. 468].) The fact that the person to whom the slander may have been uttered was not influenced thereby or had subsequently regained his confidence in the plaintiff, would not be such a "mitigating circumstance."

(6) *Defendant claims that in several instances the court instructed the jury to award damages irrespective of the question of proximate cause.* In support of this contention, defendant lifts out of context such statements as the following: "The slanderous charge in the plaintiff's complaint is as a matter of law, slanderous per se, and those terms 'per se,' means just in Latin, 'by itself,' and if it is proven to have been made, plaintiff is entitled to general or compensatory damages." We have examined each such statement in the context in which it appeared and conclude that the instructions viewed as a whole correctly and adequately informed the jurors on the subject of damages, including the element of proximate cause.

■ (7) *Defendant, referring to an instruction on mental suffering,*[2] *claims that the first two sentences instructed the jury that physical pain has been proved in the case and that,*

---

[2]This instruction reads as follows: "The law says that a recovery may be had in monetary damages for mental suffering. By this is meant a recovery for something in addition to the form of mental suffering ordinarily described as physical pain. It includes the numerous forms and phases that mental suffering may take which will vary in each case with the nervous temperament of the individual and his or her mental worry, distress, grief, mortification, where they are shown to exist. These are all proper component elements of that mental suffering for which the law entitles the injured party to redress in monetary damages."

*the court having already told the jury that mental suffering
was physical pain, the instruction amounted to a direction
to find mental suffering.* A mere reading of the instruction
demonstrates the utter lack of a basis for such a criticism.

Defendant criticizes the third sentence of this instruction
as misleading. "One of the elements entering into damages
for a libel is the injury to the feelings of the person libeled.
That injury may be inferred by the jury from the testimony
with relation to the social status of the person libeled. There
seems to be no good reason, however, why this inference
should not be supplemented by the direct statement of the
plaintiff to the effect that his feelings were injured . . ."
(*Earl* v. *Times-Mirror Co.,* 185 Cal. 165, 170 [196 P. 57].)

██ "We think, therefore, that mental worry, distress, grief,
mortification, where they are shown to exist, are properly
component elements of that mental suffering for which the law
entitles the injured party to redress in monetary damages."
(*Merrill* v. *Los Angeles Gas & Elec. Co.,* 158 Cal. 499, 513
[111 P. 534, 139 Am.St.Rep. 134, 31 L.R.A.N.S. 559].) De-
fendant says that the Merrill case was criticized in *Stein-
berger* v. *California Electric etc. Co.,* 176 Cal. 386, 390 [168
P. 570]. That is true, but not in respect to the elements of
mental worry above quoted.

██ Defendant says this instruction does not limit the jury
to consideration of mental suffering experienced by plaintiff
"as the direct, proximate and immediate effect" of the
slander. We find no merit in this point which ignores the
concluding words of the third sentence of this instruction,
"where they are shown to exist."

██ (8) *Defendant contends that the damages assessed
($4,500 compensatory and $500 punitive) are so excessive as
to appear to have been given under the influence of passion or
prejudice.* This, in effect, is a claim that the evidence does
not justify the verdict. (*Graybill* v. *De Young,* 140 Cal. 323,
327 [73 P. 1067].) There is evidence of mental and physical
suffering. Plaintiff testified that when she heard of the
slanderous statement it made her ill for weeks. It made her
ashamed to see people. She could not work for days. In
view of this evidence and of the presumption which the law
entertains that a person is damaged by the utterance of re-
marks which are slanderous *per se,* there is no basis for a
reviewing court to hold this verdict excessive. "There can
be no measure of compensation for the wrong done to a

plaintiff by charging her with a crime, except the judgment of an impartial jury.'' (*Harris* v. *Zanone*, 93 Cal. 59, 71-72 [28 P. 845], holding an award of $5,000 for publicly calling plaintiff a thief was not excessive. See also *Behrendt* v. *Times-Mirror Co.*, 30 Cal.App.2d 77, 90 [85 P.2d 949], refusing to interfere with a $10,000 verdict for libel.)

(9) *Finally, defendant assigns as a basis for reversal of the judgment an order which struck from the files his notice of intention to move for a new trial.* This order was apparently predicated upon a failure to support the motion for a new trial with a memorandum of points and authorities.

It happened that defendant transmitted to the clerk of the court three separate documents in the same envelope: his notice of intention to move for a new trial, his notice of motion for judgment notwithstanding the verdict, and a ''memorandum of points and authorities'' reading as follows: ''Code of Civil Procedure, Section 629. *Lekos Estate,* 109 Cal.App.2d 42 [240 P.2d 387]. *Washington* v. *San Francisco,* 111 Cal.App.2d 368 [244 P.2d 774].''. Plaintiff contends that this memorandum could only relate to the motion for judgment notwithstanding the verdict, but as we read the statute and the decisions cited we think they could relate to either or both subjects, although the statute cited bears more directly upon the motion for judgment than the motion for a new trial. However, there is a question of fact involved, the question whether or not this memorandum was intended to support the motion for a new trial.

Particularly significant in this connection are the requirements of subdivisions (a) and (b) of rule 3 of the Rules for the Superior Courts. Rule 3(a) declares that a party ''filing a notice of motion, except for a new trial, shall serve and file therewith a memorandum of points and authorities to be relied upon. The absence of the memorandum may be construed by the court as an admission that the motion is not meritorious and cause for its denial.'' Rule 3(b) declares a party ''seeking a new trial in a civil case shall, within ten (10) days after filing notice of intention to move therefor, serve and file a memorandum of points and authorities relied upon . . .'' Accordingly, when defendant mailed to the clerk this unidentified memorandum with the two notices mentioned, it would be a fair inference that he tendered the memorandum in support of the motion for judgment, in response to the requirement of rule 3(a), particularly in view of the fact that under rule 3(b) he had 10 days within which to

serve and file a memorandum in support of the notice of motion for a new trial. We imply a finding to this effect by the trial court.

Defendant argues that the failure to file a memorandum in such a case does not authorize dismissal of the motion. He relies upon the following provision of superior court rule 3(b): "Except for good cause shown, the failure of the moving party to serve and file the prescribed memorandum shall be grounds for denial of the motion without a hearing on the merits." He says this comprehends merely a denial without a hearing, does not sanction dismissal or striking from the file and therefore requires consideration of the motion on the merits. That may well be but, as defendant concedes, the time within which the trial court had jurisdiction to determine the motion for a new trial has long since expired and the effect thereof is "a denial of the motion without further order of the court" (Code Civ. Proc., § 660) and defendant did not seek the remedy which might have been afforded by a writ of mandamus, as suggested in *Free* v. *Furr,* 140 Cal.App.2d 378, 385-386 [295 P.2d 134].

It appears that the only point not already considered by us upon this appeal which defendant wished to present to the trial court upon motion for a new trial was his claim of newly discovered evidence tending to impeach some of the testimony of George Alfano who testified that defendant uttered the slanderous remarks in suit when the two of them were on a certain baseball field. Asked, upon direct examination, "approximately when" this conversation occurred, the witness said "Oh, about June 1st, 1953." Upon cross-examination, asked to give the date of this conversation, he said: "It was right around the first of June, 1953." In support of his motion for a new trial defendant filed two affidavits to the effect that on June 1, 2 and 3 the witness Alfano was (between the hours of 10 a.m. and 4:45 p.m.) each day physically present at the plant of his employer in Avon, California, hence could not have been present at the time and place he said the slanderous utterance was made. It appears that these affidavits were stricken from the files by the trial court because filed too late.[3] While it is not the

---

[3]Plaintiff moved to strike (1) these two affidavits, (2) the motion for judgment notwithstanding the verdict and (3) the notice of intention to move for new trial.

The motion to strike the affidavits and the motion for judgment were

function of a reviewing court in the first instance to determine a question of fact, we do not believe that the stricken affidavits could have seriously impeached Alfano's testimony in the mind of the trial judge. When the witness testified in September, 1954, that a certain conversation took place ''about'' or ''around'' the first of June, 1953, it readily could have occurred several days either side of June 1 without involving any impeachment of the witness' testimony. It easily could have occurred on May 30, which of course was a holiday, or on May 31 which happened to be a Sunday in 1953.

█ Defendant appealed also from the denial of his motion for judgment notwithstanding the verdict but has discussed no phase of it before this court, confining his argument to points relevant to his urge for a reversal of the judgment. This we deem an abandonment of his appeal from the order mentioned.

The judgment and the order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied August 24, 1956, and appellant's petition for a hearing by the Supreme Court was denied September 25, 1956.

---

heard on October 25, 1954. The court denied the latter and continued the former to November 1.

A minute order of November 1, states that ''The hearing on the within Motion to Strike and Motion to Strike Notice of Intention to Move for a New Trial'' came on for hearing and that the court ''orders that said motion be and the same are hereby granted.''

We interpret this as a granting of the motion to strike the affidavits (as well as the notice of intention to move for a new trial), not a denial of that motion as plaintiff claims, nor a failure to decide that motion as defendant claims.