[Civ. No. 9023.    Third Dist.    Sept. 10, 1957.]

JOHN MORANVILLE, Respondent, v. FRANK ALETTO, Appellant.

668

Jack M. McPherson and Loyd H. Mulkey, Jr., for Appellant.

Goldstein, Barceloux & Goldstein, P. M. Barceloux, and Burton J. Goldstein for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against defendant for slander, and following a trial before the court sitting without a jury was awarded the sum of $1,000 for general damages and $500 as exemplary damages. Defendant's motion for a new trial was denied and he has appealed from the judgment.

The evidence may be summarized briefly as follows: Respondent Moranville was on duty as a police patrolman in the city of Orland from midnight to 8 a. m. on June 8, 1953, and in the course of his patrol he noticed defendant Aletto in one of the local saloons. At about 2 a. m. respondent noticed a car, proceeding without lights, run a stop sign, so he pursued the car, sounded his horn several times, turned on his red light, sounded his siren and eventually brought the car to a halt. Appellant was driving the car, and respondent took him to the police station and made arrangements for a sobriety test at the hospital. After leaving the hospital, respondent and appellant returned to the police station where respondent asked appellant to remove all of his personal property, gave him a receipt for it and placed all of the items in a large envelope which was then placed in a locked drawer. The receipt given did not list any money, and appellant made no objection to it. Respondent asked appellant if he had any money, and appellant replied, "I have no money."

At 6:30 a. m. appellant's wife came to the police station and after she posted bail respondent gave her the contents of appellant's property bag. Appellant was released, and the Aletto family departed.

About 8:30 a. m. Mrs. Aletto again appeared at the police station and wanted to know what had happened to appellant's money. Respondent told her appellant had no money when he was booked. Mrs. Aletto was very irritated and said that she had known appellant for a long time and that was the first time he had ever been broke.

About 10:30 a. m. appellant appeared before Judge Kibby to be arraigned. There were also present in the court room appellant's wife and son, and appellant testified that he thought Constable Simpson, Bob Kiley, a newspaperman, and an unidentified insurance adjuster were also present. After the arraignment Judge Kibby asked appellant if he had received all of his property. Appellant replied that he had not.

As the Aletto family was proceeding down the stairs from the court room respondent passed them and said, "Mr. Aletto, I'd like to talk to you." Appellant replied, "I have nothing to say to you, Mr. Moranville." By this time respondent had reached the bottom of the stairs and he opened the door to the police station. Appellant followed respondent into the police station and stood in front of the booking desk. Also present were appellant's wife and son, a police officer, Harold Boje, Marcus Benson, and Tony Ponciano, Jr.

There are at least three different stories as to what then occurred. They are:

(a) The witness Boje testified that the first thing he heard was Aletto saying that Moranville took his money, after which Moranville asked Aletto if he was stating that he had taken Aletto's money, and Aletto said, "Yes, that you stole my money."

(b) Moranville testified that as Aletto came in, Moranville said, "Are you accusing me of stealing your money?", to which Aletto replied, "Yes, you 'so-and-so' I am accusing you of stealing my money."

(c) Aletto testified that Moranville asked him to come into the police station and said, "Are you accusing me of being a thief—stealing your money?"; that he replied, "I didn't accuse anybody of anything"; and, "I kept telling him I was sick—and I wanted to go home."

Respondent testified that the naming of him as a thief by Aletto had hurt his social standing in the community, had bothered his 26 year old wife and three children, that he suffered anxiety and distress as a result of these charges, including apprehension concerning the loss of his job, and further that he suffered apprehension that he would not be considered for possible future appointment as chief of police. He referred to several people in Orland, including the mayor and a city councilman, who had made reference to Aletto's charges. The witness Benson heard general gossip about Aletto's charges from several different sources in Orland.

Appellant's principal contentions are:

(1) The evidence shows that Moranville consented to the publication and therefore is barred from recovery, under the rule of *volenti non fit injuria*, and that there is no evidence in support of the implied finding that any publication that was made by appellant was not invited by respondent. (See 53 C.J.S., p. 129.)

(2) The damages awarded were excessive as a matter of law as there was no evidence of malice.

Appellant relies upon the rule *volenti non fit injuria* and cites section 3515 of the Civil Code which reads: "He who consents to an act is not wronged by it."

Appellant also cites *Pouchan* v. *Godeau*, 167 Cal. 692 [140 P. 952], in which the defendant intercepted plaintiff at the doorway of a certain hall and in the presence and hearing of divers persons said to him, "Thieves are not allowed in here." Plaintiff responded, "Then you call me a thief." De-

fendant answered, "Yes, you are a thief." ■■■ While the cited case is authority for the rule that the defense of *volenti non fit injuria* applies to a slander action, we regard it as an authority against rather than in support of appellant's contention. ■■■ For the court said at page 694:

"Each and every witness who testified to the use of the language complained of testified to the effect that defendant intercepted and barred the entrance of plaintiff to the hall, and at the same time opened the conversation by saying to him, 'Thieves are not allowed in here.' This language, under the circumstances of its use, clearly in itself and without further explanation *prima facie* carried the inference that plaintiff was a thief, or that defendant so charged.

"The fact that plaintiff, by a question drew out a reiteration in more direct language of the charge already made, in the presence of the same people, does not bring the case within the rule of '*Volenti non fit injuria,*' relied upon by defendant in support of his request for the rejected instructions.

"Where a defendant, not in the presence or hearing of third persons, makes a slanderous statement about a plaintiff, and thereafter at the request of the plaintiff repeats the statement in the presence and hearing of third persons, such repetition cannot be made the basis of an action for slander. Such a case is within the rule now invoked by defendant."

■■■ In the instant case, whether appellant consented to the slander was a question of fact for the trial court to determine. The witness Boje testified: "Q. Well, Mr. Aletto called—said that Moranville took his money. Q. Uh-huh. Then would you state what conversation took place after you heard that? A. Well John asked—John Moranville asked him if he was stating that he took his money—and Mr. Aletto turned around and said, yes, that you stole my money."

Appellant states in his brief: "The only testimony on plaintiff's side that would in any way take this case out of the application of that rule would be the testimony of witness Boje that the defendant stated that the plaintiff Aletto stole his money prior to being questioned concerning this fact by plaintiff Moranville, . . ."

Appellant argues that the testimony of respondent and of other witnesses was in conflict with Boje's testimony on the point that the appellant stated that respondent stole his money prior to being questioned by respondent about it, and that

the judgment for respondent was completely contrary to the evidence.

However, we cannot ignore the familiar and well settled rule that the trial court is the judge of the weight of evidence, and while it may well be, as argued by appellant, that the preponderance of the evidence as shown by the record supports appellant's contention, yet it cannot be held as a matter of law that the witness Boje's testimony does not provide substantial evidentiary support of the judgment.

Appellant's final contention is that the damages awarded were excessive as a matter of law as there was no evidence of malice. There is little merit in this contention.

This being a case of slander which is libelous *per se* (charging the crime of theft), general damages are presumed as a matter of law. (*Clay* v. *Lagiss,* 143 Cal.App.2d 441, at p. 448 [299 P.2d 1025].)

In addition, plaintiff is entitled to damages for injury to his feelings, including mental worry, distress, grief, and mortification. (*Clay* v. *Lagiss, supra,* at p. 449.)

Theft is a serious charge, definitely implying a high degree of moral turpitude. (*In re Hallinan,* 43 Cal.2d 243, at pp. 247-248 [272 P.2d 768].) To circulate such a charge of and concerning an officer of the law on a three-man police force in a small farming community enhances the seriousness of the charge. Public officials, such as police officers, judges, and so forth, are particularly dependent upon their reputation for honesty and integrity.

Appellant argues that there is no evidence of malice in the record supporting the finding of malice and the award of exemplary damages. The rule of law is that where one wilfully and intentionally slanders another, a presumption or inference of evil motive and malice arises. Malice may be inferred from all the facts and circumstances. "Although malice may not be inferred from the fact alone of the communication of a defamatory statement (Civ. Code, § 48), the tenor of the statement may be evidence of malice." (*Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 799 [197 P.2d 713].)

As to appellant's claim that the award of $1,000 as compensatory and $500 as exemplary damages was excessive, what this court said in *Fry* v. *Bank of America,* 142 Cal.App. 2d 150, at pages 158-159 [298 P.2d 34], is quite applicable:

"Defendant's next contention, that the sums awarded for compensatory as well as punitive damages were excessive, is

likewise without merit. The rule is too well established to warrant citation of authority that when the jury has resolved the conflicting evidence, and the inferences to be drawn therefrom, in favor of the prevailing party, its conclusion in the absence of a showing that it was the result of passion or prejudice is conclusive on appeal. [Citation.] ██ The question on appeal is not the amount of damages as such that the appellate court itself would have awarded, but whether or not the court believes that the damages are so excessive as to show passion or prejudice on the part of the jury. [Citation.] The conclusion of this court in this regard receives added strength from the fact that a like contention was made by defendant on its motion for a new trial, but the trial court denied the same and refused to disturb the award. [Citation.] ██ . . . It was for the jury to determine the amount of mortification and injury to her character caused by such imprisonment and adverse publicity, and as noted above, in the absence of a showing that such determination was the result of passion or prejudice, this court may not interfere with that determination."

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.