[Civ. No. 42900. Second Dist., Div. One. Dec. 16, 1974.]

JACK DOUGLAS, Plaintiff and Appellant, v.
S. ROGER JANIS, Defendant and Appellant.

**COUNSEL**

I. B. Kornblum and David H. Kornblum for Plaintiff and Appellant.

Rosenfeld, Meyer & Susman, John G. Davies and Edward J. Riordan for Defendant and Appellant.

## OPINION

**LILLIE, J.**—Plaintiff recovered judgment on a jury verdict in an action for slander; subsequently the trial court entered an order granting defendant's motion for a new trial. Plaintiff appeals from the order; defendant appeals from the judgment.

The judgment awarding plaintiff $50,000 compensatory damages was entered June 21, 1972. On June 22, 1972, plaintiff served on defendant by mail notice of entry of judgment, and on June 23, 1972, the clerk of the court served notice of entry of judgment on defendant. On July 10, 1972, defendant filed notice of intention to move for a new trial; thereafter plaintiff filed notice of motion to strike notice of intention to move for a new trial on the ground that it "was not timely filed and that such filing is jurisdictional." After a hearing the motion to strike was denied on the ground that "plaintiff failed of strict compliance with the statutory requirements."[1] Subsequently defendant's motion for a new trial was granted and the court filed its specification of reasons in support thereof.

■ Viewing the record in light of applicable statutory and case law authority we conclude that defendant's notice of intention to move for a new trial was not timely filed and, this requirement being jurisdictional, the trial court acted outside of its jurisdiction and in excess of its power in granting the motion for new trial. The time in which the notice must be filed is governed by section 659, subdivision 2, Code of Civil Procedure.[2] Under section 1013, Code of Civil Procedure,[3] service of a document by

---

[1]We construe the court's apparent intent respecting this ambiguous language *infra*.

[2]Section 659 reads in pertinent part: "The party intending to move for a new trial must file with the clerk and serve upon each adverse party a notice of his intention to move for a new trial. . . . 2. Within 15 days of the date of mailing notice of entry of judgment by the clerk of the court pursuant to section 664.5, or service upon him by any party of written notice of entry of judgment . . . whichever is earliest. . . ."

[3]Section 1013: "In case of service by mail, the notice or other paper must be deposited in the United States post office, or a mail box, sub-post office, substation, or mail chute, or other like facility regularly maintained by the government of the United States, in a sealed envelope, with postage paid, addressed to the person on whom it is to be served, at his office address as last given by him on any document which he has filed in the cause and served on the party making service by mail; otherwise at his place of residence. The service is complete at the time of the deposit, but if, within a given number of days after such service, a right may be exercised, or an act is to be done by the adverse party, the time within which such right may be exercised or act be done, is extended two days, together with one day additional for every full 100 miles distance between the place of deposit and the place of address, if served by different post offices, but such extension shall not exceed 30 days in all nor shall it apply to extend the time for filing notice of intention to move for new trial, notice of intention to move to vacate judgment pursuant to Section 663a of this code or notice of appeal."

mail is "complete" when it is deposited in the mail (*McKeon* v. *Sambrano,* 200 Cal. 739, 741 [255 P. 178]; *Gill* v. *Southern Pacific Co.,* 174 Cal. 84, 87 [161 P. 1153]; *Caldwell* v. *Geldreich,* 137 Cal.App.2d 78, 81 [289 P.2d 832]); and under section 1013a, subdivision (1),[4] proof of service may be made by a declaration attached to the served document in the same manner as here made. We therefore compute the 15-day period afforded defendant in which to file his notice of intention to move for a new trial from the day of service of plaintiff's notice of entry of judgment, June 22, 1972, "by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." (§ 12, Code Civ. Proc.) Taking judicial notice of the calendar for June and July, 1972 (§§ 452, subd. (h) and 459, subd. (a)(2), Evid. Code), we determine the 15th day from June 22, 1972, to be Friday, July 7, 1972 (not a holiday). Defendant's notice was filed on July 10, 1972. Thus, because compliance with the 15-day requirement of section 659 is jurisdictional defendant's notice was totally ineffectual; the trial court had no power to entertain or act on the motion, and its purported grant of the new trial was void. (*Neale* v. *Morrow,* 174 Cal. 49, 51-52 [161 P. 1165]; *Markaway* v. *Keesling,* 211 Cal. App.2d 607, 610 [27 Cal.Rptr. 583]; *Radford* v. *Crown City Lumber & Mill Co.,* 165 Cal.App.2d 18, 20 [331 P.2d 438]; *King* v. *Wilson,* 101 Cal. App.2d 242, 243 [225 P.2d 270], [notice one day late].)

■ Defendant claims plaintiff's notice of entry of judgment was "defective" and therefore ineffectual to commence the running of the 15-day period because the declaration of "proof of service by mail" attached to the notice did not comply with the requirements of sections 1013 and 1013a. He refers to the language of section 1013 which provides that a document served by mail must be "addressed to the person on whom it is to be served, at his office address as last given by him on any document which he has filed in the cause and served on the party making service by mail"; and submits that every document he previously served on plaintiff bore defense counsel's suite number in a named building in addition to the street, city address and zip code, but that plaintiff's declaration of proof of service did not contain the room number and building name. He also

---

[4]Section 1013a: "Proof of service by mail may be made by one of the following methods:

"(1) An affidavit [declaration] affixed to the original, or to a true copy, of the document served and filed in the cause, showing the name and residence or business address of the person making the service, showing that he is a resident of or employed in the county where the mailing occurs, that he is over the age of 18 years and not a party to the cause, and showing the date and place of deposit in the mail, the name and address of the person served as shown on the envelope, and also showing that the envelope was sealed and deposited in the mail with the postage thereon fully prepaid. . . ."

refers to section 1013a, which requires the accompanying affidavit or declaration of proof of service by mail to show the "place of deposit in the mail," and argues that inasmuch as the declaration shows the place of its mailing as "Los Angeles, California," this is inadequate because there is no indication of the specific mailbox in Los Angeles in which it was mailed.[5] Although we agree that "strict compliance" with sections 1013 and 1013a is required, we decline to equate "strict compliance" with absurdity in compliance. The rule of "strict compliance" is satisfied by substantial, without literal, compliance (see 40 Words and Phrases, pp. 452-453, and authorities cited therein); and in light of the fact that the record shows that counsel for defendant admitted that his office received a copy of the notice of entry in the mail, we find defendant's entire argument in this respect to be hypertechnical. Moreover, the cases defendant cites fail to support his position. In *Forslund* v. *Forslund,* 225 Cal.App.2d 476 [37 Cal.Rptr. 489], and *Marsden* v. *Collins,* 23 Cal.App.2d 148 [72 P.2d 247], the court found there had been sufficient compliance with the "mailing" sections of the Code of Civil Procedure;[6] in *Carlon* v. *Gray,* 10 Cal. App.2d 658 [52 P.2d 966], the purported proof of service by mail failed to show the street address of both the addressor and the addressee. *Marsden* distinguishes *Carlon* for this reason (23 Cal.App.2d p. 150).[7]

In light of the foregoing we deem it unnecessary to consider plaintiff's additional contention that the specification of reasons given in support of the order was inadequate.

Inasmuch as our ruling above automatically reinstates the judgment we summarize the evidence for disposition of the issue of insufficiency of the

[5]Because defendant made similar contentions to the trial court in opposition to plaintiff's motion to strike the notice of intention to move for a new trial and thereafter the court denied the motion, and the record contains no comment by the court in support of this ruling other than the statement that "plaintiff failed of strict compliance with the statutory requirements," we reasonably assume that the court accepted these arguments by defendant. We are not, of course, bound by the court's construction of the applicable code sections and may evolve our own independent interpretation. Construction of a statute is a matter of law. (*Plum* v. *City of Healdsburg,* 237 Cal.App.2d 308, 313 [46 Cal.Rptr. 827]; cf. *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *State Bd. of Funeral Directors* v. *Mortuary in Westminister Memorial Park,* 271 Cal.App.2d 638, 642 [76 Cal.Rptr. 832].)

[6]*Forslund* actually contains language showing that a certificate of mailing referring only to "Hayward, California" as the place of mailing constitutes adequate proof of service (p. 486); as does *Fritz* v. *Foote,* 162 Cal.App.2d 622, 623 [328 P.2d 522], in relation to a mailing from "San Francisco" (pp. 623-624).

[7]*Blalock* v. *Ridgway,* 92 Cal.App. 132 [267 P. 713], cited by defendant in oral argument, is distinguishable; it involves an attempt to dismiss a probationary teacher by giving her oral and "informal" notice thereof in lieu of the timely written notice by registered mail required in the statute there applicable.

evidence to support the judgment raised on defendant's appeal. Except for the precise language used by defendant in relation to the claim of slander, the evidence is undisputed. As to this we consider the evidence in a light most favorable to the prevailing party and resolve all conflicts in favor of the respondent, and indulge all legitimate and reasonable inferences to uphold the verdict (*Cunningham* v. *Simpson,* 1 Cal.3d 301, 306 [81 Cal.Rptr. 855, 461 P.2d 39] [slander]).

Plaintiff is an independent television producer who has produced numerous programs in which he also has appeared as a commentator or performer. In 1964 he made a pilot film for a T.V. program to be called "AMERICA!" wherein places of interest in the United States would be featured; and subsequently sold the show. For financing the production plaintiff arranged to borrow $418,000 from a bank, $100,000 of which had to be guaranteed by others. In this connection plaintiff, a member of the Riviera Country Club, approached defendant, also a member, and other individuals; 39 films were initially planned, and ultimately defendant and the others agreed with plaintiff that in return for 50 percent of the net profits of the show they would make the guarantee, and in addition would pay plaintiff for their percentage interest $20,000 at the commencement of the series and $15,000 after the 39 films had been completed. The production costs included $1,000 per show as salary to plaintiff for his role as producer and on-camera host. Ultimately 65 shows were produced and accordingly plaintiff drew a total of $65,000 in salary; with the $35,000 paid him by defendant and the others, he realized a total of $100,000. The show was not a financial success and defendant and the investors lost some of their investment. In addition, defendant and the others participated with plaintiff in the production of other format productions which too were unprofitable resulting in further monetary losses. These activities involved the formation of various participating corporate entities and covered the years 1964 through 1967. Sometime in January 1969, defendant stated to Fredericks, another investor, "that he discovered that Mr. Douglas had taken $100,000 from the 'AMERICA!' series and that he had records to prove it"; on another occasion in January defendant stated to a group of four or five Riviera members, including a Mr. Goethals, during lunch at the club "that Mr. Jack Douglas had stolen $100,000 from one of his corporations."

█ In light of the substantial evidence in the record of defendant's statements to others and that these statements were untrue and nonprivileged, we find defendant's contention of insufficiency of the evidence to support the judgment to be untenable. Section 46, Civil Code, defines slander as "a false and unprivileged publication, orally uttered . . . which

1. Charges any person with crime. . . . 3. Tends directly to injure him in respect to his office, profession, trade or business . . . by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits. . . ."[8] Fredericks, who testified to the aforementioned statement made to him by defendant, also testified that he had understood it to mean that plaintiff had taken *"another $100,000," in addition* to the $100,000 in salary and investment funds, from the "AMERICA!" series. Goethals, after testifying that defendant had stated to the luncheon group, "Mr. Jack Douglas had stolen $100,000 from one of his corporations," further testified in answer to the following questions: "Q. Did you believe that he [defendant] was saying that it was something that Mr. Douglas was not entitled to? A. Yes. . . . That he had taken it. Q. And was not entitled to it. A. Yes. Q. Had not accounted for it? A. Yes," The words spoken were understood by the hearer in a slanderous sense, and are actionable. In *Frolich* v. *McKiernan,* 84 Cal. 177 [24 P. 114], the Supreme Court, affirming a judgment for slander, said at page 178: "[T]he expression 'you want to swindle me out of my money,' . . . was so understood by the parties then and there present, as imputing to plaintiff an attempt to steal. . . ." In *Moranville* v. *Aletto,* 153 Cal.App.2d 667 [315 P.2d 91], defendant said to plaintiff within the hearing of others, "Yes . . . you stole my money."; the court said at page 672: "Theft is a serious charge, definitely implying a high degree of moral turpitude. [Citation.]"

Defendant testified that he had not stated to Goethals that plaintiff had "stolen" $100,000, only that he had "taken" it, as he had said to Fredericks; and even as to Fredericks, and in his statement to Goethals, he had merely meant to indicate that plaintiff had legitimately received the initial $100,000 in salary and investment funds. However, this testimony was in direct conflict with that of Fredericks and Goethals as to what had been said and how they had construed the language. The jury was entitled to draw its own conclusion. Whether defendant's statements could reasonably be understood by Fredericks and Goethals to be defamatory was a question for jury determination. (*MacLeod* v. *Tribune Publishing Co.,* 52 Cal.2d 536, 546 [343 P.2d 36]; *Williams* v. *Daily Review, Inc.,* 236 Cal.App.2d 405, 414 [46 Cal.Rptr. 135]; *Correia* v. *Santos,* 191 Cal.App.2d 844, 853-854 [13 Cal.Rptr. 132].) Moreover, in *Swift & Co.* v. *Gray* (9th Cir.

---

[8] The statements patently relate to plaintiff's "profession, trade or business." He testified that various members of the Riviera Country Club subsequently brought up to him matters involving defendant's accusatory statements, and that among the members of the club there were about "two dozen who are in television or the allied fields." A slanderous statement which falls within the purview of section 46 constitutes slander per se (*Moranville* v. *Aletto,* 153 Cal.App.2d 667, 672 [315 P.2d 91] [imputation of the crime of theft]; *Hanley* v. *Lund,* 218 Cal.App.2d 633, 644 [32 Cal. Rptr. 733] [imputation of impropriety as to business activity]).

1939) 101 F.2d 976, a slander action decided under California statutory and case law, the court in affirming a plaintiff's judgment stated: "To say that one has 'taken' money belonging to another and not accounted for it is to say that he has stolen that money." (P. 981.) It is true that *Carl* v. *McDougal*, 43 Cal.App. 279 [184 P. 885], declares that "The word 'taken' does not imply the commission of a crime," (p. 282), but this isolated comment is pure dictum, the result of an obviously inartful attempt to distinguish another case cited by defendant—the words actually used by the defendant in *Carl* having been "He forged a check on me," which were found to be actionable and a judgment for slander was affirmed.

■ Defendant also contends that there is no substantial evidence to support the general damages verdict of $50,000. From the tenor of his comments we assume that he is urging that the damages awarded were excessive. This contention, too, is without merit. Plaintiff testified that as a result of defendant's statements he suffered "mental" upset and from lack of sleep, and from that time on has continued to have "a feeling of general ill-being and just mental strain and emotionalism." He also testified: "I felt very ashamed. I felt humiliated. I do to this day." "This being a case of slander which is libelous *per se* (charging the crime of theft), general damages are presumed as a matter of law. (*Clay* v. *Lagiss,* 143 Cal.App.2d 441, at p. 448 [299 P.2d 1025].) [¶] In addition, plaintiff is entitled to damages for injury to his feelings, including mental worry, distress, grief, and mortification." (*Moranville* v. *Aletto,* 153 Cal.App.2d 667, 672 [315 P.2d 91].) ■ Moreover, "[T]he determination of the jury on the issue of damages is conclusive on appeal unless the amount thereof is so grossly excessive that it can be reasonably imputed solely to passion or prejudice in the jury. (*Dunn* v. *Hearst, supra,* [139 Cal. 239 (73 P. 138)]; *Earl* v. *Times-Mirror Co.* (1921) 185 Cal. 165, 186-190 [196 P. 57]; *Hanley* v. *Lund* (1963) 218 Cal.App.2d 633, 644-645 [32 Cal.Rptr. 733]; *Bell* v. *Kelly* (1925) 73 Cal.App. 189, 191 [288 P. 719]; . . .)" (*Stoneking* v. *Briggs,* 254 Cal.App.2d 563, 579 [62 Cal.Rptr. 249].) In *Russell* v. *Geis,* 251 Cal.App.2d 560 [59 Cal.Rptr. 569], a defamation case in which in 1967 (in comparison to the present value of the dollar) the jury awarded $55,000 to one plaintiff and $45,000 to another, the court stated at pages 572-573: "Here, each plaintiff introduced substantial evidence of damage to her reputation, or humiliation, and of mental suffering, as well as the inability to obtain employment. Under the principles enunciated in the numerous cases discussing the subject of damages, we cannot say that either judgment is so excessive that it must be set aside." *Cunningham* v. *Simpson,* 1 Cal.3d 301 [81 Cal.Rptr. 855, 461 P.2d 39], wherein the Supreme Court affirmed liability for slander but found the award of

$25,000 excessive, is clearly distinguishable. Therein "the only actual damage related to the slander which was disclosed at trial" was a $300 special damage loss (p. 309), and the court said: "It is true of course, that upon proof of actual damage in an action for slander (Civ. Code, § 46, subd. 5) the jury, in awarding general damages, may consider plaintiff's loss of reputation, shame, and hurt feelings (see Rest., Torts, § 621 and comment; *Di Giorgio Fruit Corp.* v. *American Federation etc. Organizations* (1963) 215 Cal.App.2d 560, 576-578 [30 Cal.Rptr. 350]). The slander in the instant case, however, involves only a publication to a single individual who, at best, bore a rather remote relationship to plaintiff."

■ Defendant cites as prejudicial error the trial court's refusal to give two requested instructions relating to plaintiff as a "public figure."[9] However the United States Supreme Court cases cited as authority plainly involve not only "public figures" but defamations directed against them in relation to public issues and matters of public interest commented upon by defendant publications, for example, *Greenbelt Pub. Assn.* v. *Bresler,* 398 U.S. 6 [26 L.Ed.2d 6, 90 S.Ct. 1537]. "There can be no question that the public debates at the sessions of the city council regarding Bresler's negotiations with the city were a subject of substantial concern to all who lived in the community. . . . The Greenbelt News Review was performing its wholly legitimate function as a community newspaper when it published full reports [containing an alleged libel] of these public debates in its news columns." (P. 13.) Assuming arguendo that plaintiff as a lesser-known television personality might fit the description of a "public figure," were he

---

[9]"You are instructed that the plaintiff Jack Douglas is what is known in law as a 'public figure' in connection with his business occupation and profession as a producer of television programs such as the AMERICA! series and as a television personality. Plaintiff may recover damages for a slanderous statement relating to his status as a 'public figure' only if you determine that he has proved by a preponderance of the evidence that a slanderous statement concerning him was made by defendant with the knowledge by the defendant that such statement, if any, was false or with reckless disregard of whether the statement made was true or false.

"See, e.g., *Greenbelt Co-op Publishing Ass'n.* v. *Bresler,* 398 U.S. 6, 12-13 [26 L.Ed.2d 6, 13-15, 90 S.Ct. 1537] (1970); *New York Times Co.* v. *Sullivan,* 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412] (1964); *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130 [18 L.Ed.2d 1094, 87 S.Ct. 1975] (1967); *Time, Inc.* v. *Hill,* 385 U.S. 374 [17 L.Ed.2d 456, 87 S.Ct. 534] (1967).

"Thus, defendant would not be subject to liability for a statement concerning plaintiff in connection with his status as a producer of television programs such as the AMERICA! series, even if such statement could reasonably be understood by third parties as charging plaintiff with a crime, unless defendant intended his statement to be so understood or consciously disregarded the risk that it would be so understood. Mere negligence on the part of defendant in making such a statement would not be sufficient to make him subject to liability.

"See, [same citations as for prior instructions]."

to have been defamed in a broadside publication to the general citizenry relating to his performance on television, the proffered instructions might have been applicable; however at bench the slanderous statements were strictly private and concerned only personal business transactions totally devoid of public concern. Instructions based on invalid theories are properly refused by the trial court. (*Roberts* v. *Del Monte Properties Co.,* 111 Cal.App.2d 69, 79 [243 P.2d 914].)

■ Defendant also claims that the trial court's refusal to instruct the jury that plaintiff had not proved any special damages[10] was error. The court fully instructed on the measure of damages applicable to the cause without alluding to special damages. Patently an instruction which would have advised the jurors in relation to a completely foreign form of damages with the admonition that plaintiff had failed to prove them would have been not only totally without relevance but confusing and prejudicial. Moreover defendant proffered his instruction orally; section 607a, Code of Civil Procedure requires that "All proposed instructions shall be typewritten." In addition its language is not contained in the record, therefore on appeal dedefendant cannot complain of the court's failure to give it. (*Scott* v. *Flanagan,* 14 Cal.App.2d 105, 112 [57 P.2d 1382].)

Other error cited by defendant is the giving of plaintiff's instruction relating to matters of "aggravated harm" and "republication."[11] Although he urges that the first paragraph "is loaded in favor of plaintiff," it is a correct statement of the law (see *Stoneking* v. *Briggs,* 254 Cal.App.2d 563, 576 [62 Cal.Rptr. 249], citing *Mercado* v. *Hoefler,* 190 Cal.App.2d 12, 19 [11 Cal.Rptr. 787]). ■ He argues that the second paragraph is "clearly erroneous [because] there was no substantial evidence of republication." This contention is directly contrary to plaintiff's testimony that various members of the Riviera Country Club, who were not present at the time defendant made either of the slanderous statements, later initiated discussions about this subject matter with him (plaintiff). Even without this testi-

---

[10]Special damages need not be proved where, as here, slander per se has been committed. (*Contento* v. *Mitchell,* 28 Cal.App.3d 356, 358 [104 Cal.Rptr. 591]; *Hanley* v. *Lund,* 218 Cal.App.2d 633, 644-645 [32 Cal.Rptr. 733].)

[11]"In determining the amount of harm which may have been done to plaintiff by any statement made by defendant about plaintiff, you may take into consideration the circumstances under which any such statement was made, including the persons to whom the statement was made, and the possible notoriety and publicity which might attach to such statement, as indicative of aggravated harm.

"You are further instructed that the original utterer of slanderous remarks is liable for the consequences of republication of said remarks to other persons where the circumstances are such that the original utterer of such slanderous remarks could reasonably have believed that said remarks would reach the ears of persons other than those who heard the original utterance."

mony it would not have been error to give the jurors the opportunity to decide whether defendant should have anticipated that his "slanderous remarks . . . would reach the ears of persons other than those who heard the original utterance." (See *Stoneking, supra,* p. 577.)

■ Nor was it error to instruct that the amount of damages to be awarded was within the jury's discretion.[12] Defendant describes this instruction as "perhaps the most prejudicial single instruction given by the court" arguing that it informed the jury that it could award whatever amount of damages it desired omitting the requirements of evidence of actual damages and causal relationships between the wrongful conduct and injury sustained, and authorizes the jury to return a verdict of damages supported by insufficient or even nonexistent evidence. The instruction was proper and supported by express authority. "In defamation cases 'there is no accurate standard by which to compute the injury, and the jury must, necessarily, be left to the exercise of a wide discretion. . . .' (*Wilson* v. *Fitch* (1871) 41 Cal. 363, 385-386.)" (*Stoneking, supra,* 254 Cal.App.2d 563, 579.) Even if error had been committed it was not prejudicial in light of the many other given instructions which correctly informed the jurors on liability and damages: "Where the court's entire charge has fully and fairly instructed on all the basic issues involved, minor errors in a single instruction could not possibly have been prejudicial. [Citation.]" (*Perbost* v. *San Marino Hall-School,* 88 Cal.App.2d 796, 801 [199 P.2d 701].)

■ During cross-examination of plaintiff, defense counsel asked if he had written a certain letter to another member of the "AMERICA!" enterprises, then sought to have a copy of the letter marked for identification. Before the court ruled, counsel commenced asking questions of plaintiff concerning the contents of the letter whereupon plaintiff objected on the ground of irrelevancy. The court permitted the document to be marked for identification; again plaintiff objected to "any question with regard to the letter" whereupon defense counsel stated: "I am not seeking to introduce it in evidence." The court overruled plaintiff's objection then permitted defense counsel to ask plaintiff without restriction numerous questions relating to the contents of the letter. Subsequently defendant sought to have the document introduced into evidence, but the court sustained plaintiff's objection. Defendant contends this was prejudicial error because the letter contained an admission by, and evidence of matters unfavorable to, plaintiff and was supportive of his (defendant's) position. Plainly defendant could

---

[12]"The assessment for damages for slander is the province of the jury and, since there can be no fixed or mathematical rule on the subject or a scale or definite standard to measure the amount, the amount to be awarded is within the jury's discretion."

not have been prejudiced by the court's ruling because his counsel had already been given, and fully utilized the opportunity to ask plaintiff about the contents of the letter. The Supreme Court held in *Frazure* v. *Fitzpatrick,* 21 Cal.2d 851, 859 [136 P.2d 566], that four letters offered into evidence were properly refused by the court because prior evidence had established the subject matter of their contents, "and the letters could have had no further value to appellant than to establish that fact." There was no error in excluding documentary evidence which was "merely cumulative." (*Kalmus* v. *Kalmus,* 103 Cal.App.2d 405, 423 [230 P.2d 57].)

Defense counsel asked plaintiff: "Did it come to your attention that the court had ruled against the first complaint [the cause proceeded on an amended complaint], what they call sustained a demurrer to it?" and plaintiff answered, "I heard of something." The court commented, "That wouldn't make any difference." Plaintiff's counsel then said "I think we ought to see what the ruling was if we are going into this," whereupon the court sustained the objection, and defense counsel questioned plaintiff on an entirely new subject matter. Defendant contends the court in sustaining the objection "erred to [his] serious prejudice," but offers no explanation as to what error the court thereby committed; and frankly we fail to see any error much less prejudice to defendant particularly in the absence of any offer of proof made by defense counsel after the court's ruling.

The order granting the new trial is reversed; the judgment is affirmed. Plaintiff to recover costs.

Wood, P. J., and Hanson, J., concurred.

A petition for a rehearing was denied January 10, 1975, and the petition of the defendant and appellant for a hearing by the Supreme Court was denied February 13, 1975.