**Shirlene GRAVITT, Plaintiff—Appellant,**

v.

**Mitchell J. BROWN, Assistant Chief, Bureau of Narcotic Enforcement, et al., Defendants—Appellees.**

No. 02–56106.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 2003.

Decided July 18, 2003.

Before: HALL, THOMAS, and PAEZ, Circuit Judges.

## MEMORANDUM *

This case involves the theft of approximately 300 kilograms ($4.5 million worth) of cocaine from the evidence vault located at the California Department of Justice, Bureau of Narcotic Enforcement ("BNE"), Riverside Regional Office. Appellant Shirlene Gravitt ("Gravitt"), the BNE Property Controller responsible for managing the vault, brought a 42 U.S.C. § 1983 suit against several state and city defendants, alleging violations of her Fourth Amendment and Fourteenth Amendment due process rights as well as a state law defamation claim stemming from the defendants' allegedly wrongful treatment of Gravitt as the "primary suspect" in the theft investigation. We affirm.

### I.

■ Gravitt makes two separate Fourth Amendment claims. First, she contends that the defendant law enforcement officers unlawfully searched her property because they submitted a falsified affidavit in support of their search warrant. Second, she argues that the defendant law enforcement officers searched her home in an unreasonable manner by sending forty officers and twenty patrol cars to her home to conduct the search.[1]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We note that the district court erred in concluding that Gravitt's claims against the individual law enforcement officers were barred by the Eleventh Amendment. Gravitt sued the officers in their *individual,* rather than their official, capacities for damages. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (noting that the Eleventh Amendment bars suits for damages against state officials sued in their

■ We need not reach the merits of Gravitt's first claim in light of the fact that she voluntarily consented to a search of her home, vehicles, and safety deposit box.[2] *See Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ("The prohibition [against warrantless entry of a person's home] does not apply, however, to situations in which voluntary consent has been obtained . . . from the individual whose property is searched . . . .") (citations omitted); *United States v. Enslin,* 327 F.3d 788, 793 (9th Cir.2003) ("Consent to search is a well-established exception to the Fourth Amendment's prohibition of warrantless searches of homes.").

■ As to her second claim regarding the reasonableness of the search of her home, we review *de novo, see Franklin v. Foxworth,* 31 F.3d 873, 875 (9th Cir.1994), and affirm. Gravitt cites to *Franklin v. Foxworth* to support her argument that the search of her home was unreasonable. *Franklin,* however, is inapposite here because the constitutional violation in *Franklin* did not stem from the number of officers searching the home or the fact that the officers continued to search despite finding no incriminating evidence. Rather, the constitutional violation was that the officers "conducted the detention of [a gravely ill man] in a wholly unreasonable manner—a manner that wantonly and callously subjected an obviously ill and incapacitated person to entirely unnecessary and unjustifiable degradation and suffering." 31 F.3d at 878. Gravitt has provided (and we found) no other legal support for her argument. Although forty officers searching her home may have appeared excessive, in light of the fact that the officers were searching for nearly 300 kilograms (approximately $4.5 million worth)

of cocaine stolen from a government evidence vault, the search was reasonable under the circumstances.

## II.

Gravitt raises two separate due process claims: (1) deprivation of her property interest in her employment, and (2) violation of her liberty interest in her reputation. We engage in a three-step inquiry to determine if Gravitt's due process rights were violated. First, we must determine if Gravitt had a protected property interest in her employment or a protected liberty interest in her reputation. Second, if Gravitt had a protected interest, then we must decide if the State defendants deprived her of this interest. Last, if deprived of her protected interest, did Gravitt receive due process? *See Clements v. Airport Auth.,* 69 F.3d 321, 331 (9th Cir. 1995); *Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir.1993).

### A.

■ We conclude that Gravitt had a protected property interest in her state employment. *See Skelly v. State Personnel Bd.,* 15 Cal.3d 194, 206, 124 Cal.Rptr. 14, 539 P.2d 774 (1975) (noting that "the California statutory scheme regulating civil service employment confers upon an individual who achieves the status of 'permanent employee' a property interest in the continuation of his employment which is protected by due process"); Cal. Gov't Code § 19996 ("The tenure of every permanent employee holding a position is during good behavior. Any such employee may be . . . permanently separated through resignation or removal for cause. . . ."). We disagree with Gravitt,

---

*official* capacity). Her claims therefore were not barred and we address them below.

**2.** Gravitt did not argue that her consent was coerced or otherwise involuntary.

however, that her involuntary placement on administrative leave deprived her of this interest because (1) the BNE paid her her full salary during her leave; (2) the BNE did not demote or move her to another position during or after her leave; and (3) Gravitt was subject to a criminal investigation at the time she was on leave.

■ Gravitt alternatively contends that the BNE "constructively discharged" her, which resulted in the deprivation of her property interest in her employment. We conclude that, although there may be triable issues of material fact as to whether Gravitt was "constructively discharged," Gravitt's due process claim must fail because she has not shown that, in the context of a constructive discharge, she was entitled to notice and a hearing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950))). Because the BNE did not affirmatively terminate Gravitt, it could not have given her notice of her termination and was not on notice itself that a due process hearing was required. Moreover, in light of the fact that Gravitt medically retired, the record does not establish what she wishes to accomplish at a due process hearing. We therefore affirm the district court's denial of Gravitt's procedural due process claim.

**B.**

■ We also affirm the district court's denial of Gravitt's "liberty interest" due process claim. Although we conclude that there are triable issues of material fact as to whether Gravitt had a valid liberty interest that the BNE, in particular Assistant Chief Brown, violated, we are not convinced that Gravitt was entitled to or wrongly deprived of notice and a hearing. Because she medically retired, it is unclear whether Gravitt was foreclosed from pursuing new employment opportunities or whether her good name and reputation were at stake as a result of the defendants' alleged infringement of her liberty interest in her reputation. *See Roley v. Pierce County Fire Protection Dist. No. 4*, 869 F.2d 491, 495 (9th Cir.1989) ("A liberty interest in employment arises when a government charge damages seriously one's standing and associations in the community. When one's good name, reputation, or integrity is at stake or when the government stigmatizes a person, foreclosing his freedom to pursue other employment opportunities, then the allegations damage standing and associations.") (internal citations omitted); *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("For where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.") (internal quotation marks, modifications, and citations omitted). Moreover, Gravitt did not avail herself of available administrative remedies and never requested a due process hearing.

**III.**

■ Gravitt contends that Assistant Chief Brown's comments to several BNE supervisors in which he stated that Gravitt was the "prime suspect" of the theft, that her house had been searched, that she was on involuntary administrative leave due to her position as Property Controller at the BNE, and that BNE staff was not to communicate with her, were slanderous per se.

"Slander is a false and unprivileged publication, orally uttered, ... which ... [c]harges any person with crime...." Cal. Civil Code § 46(1). The publication must contain a false statement of fact, and "truth is a complete defense to civil liability for slander per se." *Ellenberger v. Espinosa,* 30 Cal.App.4th 943, 952–53, 36 Cal.Rptr.2d 360 (1994); *see also Savage v. Pac. Gas & Elec. Co.,* 21 Cal.App.4th 434, 445, 26 Cal.Rptr.2d 305 (1993).

We disagree with Gravitt that Brown's comments were slander per se. Brown's statement that Gravitt was a "prime suspect" was not the same as saying that she actually committed the theft, so it was not a false statement of fact. *Cf. Kelly v. Gen. Tel. Co.,* 136 Cal.App.3d 278, 284, 186 Cal. Rptr. 184 (1982) ("The statement that plaintiff falsified invoices was slanderous per se in that it charged plaintiff with forgery."); *Moranville v. Aletto,* 153 Cal. App.2d 667, 671–72, 315 P.2d 91 (1957) (holding that accusations that the plaintiff stole money were slanderous per se). Moreover, Gravitt has not produced any evidence demonstrating that Brown did not believe the statements when he made them or that the statements were untrue. We therefore affirm the district court's grant of summary judgment in favor of the defendants with respect to Gravitt's defamation claim.

AFFIRMED.